241 So.2d 125

**Raymond E. DeFRANZE**

v.

**STATE.**

**5 Div. 17.**

Court of Criminal Appeals of Alabama.

Oct. 6, 1970.

Rehearing Denied Nov. 17, 1970.

Walker & Hill and James T. Gullage, Opelika, for appellant.

**284**

MacDonald Gallion, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

ALMON, Judge.

Raymond E. DeFranze appeals from a judgment of conviction of robbery. His sentence was fixed at thirty years in the penitentiary. Originally this case was submitted in the Supreme Court on January 24, 1969, and subsequently transferred to this Court by virtue of Act No. 987, Regular Session, 1969.

The State's evidence tended to show that during the afternoon of February 22, 1968, Mrs. Judith Harris was in her home in Auburn with her three year old daughter when someone rang her doorbell. When she opened the door appellant asked her if she knew where the "Montgomerys" lived. After a conversation, she permitted appellant to use her telephone. While inside the house, he drew a pistol and told Mrs. Harris he wanted her money. She told him there was money in her purse in the den. Appellant forced her into a bedroom where he bound her hands behind her back, blindfolded and gagged her. He then removed her clothes from the lower half of her body and tied her to the bed. Mrs. Harris testified that he went into the den and she heard her purse open and the snap of her billfold and the rattle of change. He reentered the bedroom and said "You had better not call the police because I have got friends that will get you." She heard the door slam when appellant left.

Appellant denied the robbery and testified that he had never been in Auburn at that time. Miss Jeanie Sutherland testified that she had been with appellant on the afternoon of February 22 in Columbus, Georgia, and another witness, Mike Teasley's testimony tended to support this alibi.

On rebuttal, Mrs. Phyllis Mathews, testified that appellant was in Auburn during the morning of February 22 and had entered her home there.

Appellant claims error in the court's refusal to put the prosecutrix and two police officers under the rule. The exclusion of witnesses from the courtroom is entirely a matter of discretion with the trial court, and not of right. McLean v. State, 16 Ala. 672; Teague v. State, 245 Ala. 339, 16 So.2d 877; Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, cert. denied 266 Ala. 694, 96 So.2d 178, cert. denied 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414. This

discretion is not reviewable. Riley v. State, 88 Ala. 193, 7 So. 149; Roberts v. State, 122 Ala. 47, 25 So. 238; Beddow v. State, supra. And it is within the discretion of the trial court to excuse some witnesses and not others. Brooks v. State, 146 Ala. 153, 41 So. 156; McDowell v. State, 238 Ala. 101, 189 So. 183. This seems to be particularly true in the case of law enforcement officers. Wright v. State, 1 Ala.App. 124, 55 So. 931; Ledbetter v. State, 34 Ala.App. 35, 36 So.2d 564, cert. denied 251 Ala. 129, 36 So.2d 571.

Appellant contends that the State failed to prove the allegation in the indictment that the money was taken from the person of Judith Harris. He asserts that instead of being taken from her person it was taken from her purse in the adjoining room.

Many cases in this jurisdiction have defined robbery as the felonious taking of money or valuable goods from the person of another or in his presence by violence or putting him in fear. Douglass v. State, 21 Ala.App. 289, 107 So. 791; Hardis v. State, 28 Ala.App. 524, 189 So. 216; Parsons v. State, 251 Ala. 467, 38 So.2d 209; Cobern v. State, 273 Ala. 547, 142 So.2d 869.

The technical meaning of "from her person" is well stated in Hill v. State, 145 Ala. 58, 40 So. 654, as follows:

"* * * Blackstone defines robbery to be 'the felonious and forcible taking from the person of another goods or money to any value by violence or putting him in fear.' And all of the authors, while departing in some respects from the language used by Mr. Blackstone, contain in their definition the same ingredients, and none of which contemplates a taking from a bare possession, but provide that the taking should be from the person.

"A man might have the possession of a thing, yet it might not be upon his person, or under his direct personal control.

Mr. Bishop, in his work on Criminal Law (volume 2, §§ 1177, 1178), in discussing what may be deemed the 'person,' says: 'Since robbery is an offense as well against the person as the property, the taking must be, in the language of the law, from the person. The meaning of this legal phrase is, not that the taking must necessarily be from the actual contact of the body, but if it is from under the personal protection that will suffice. Within this doctrine, the person may be deemed to protect all things belonging to the individual, within a distance not easily defined over which the influence of the personal presence extends. "If a thief, says Lord Hale, come into the presence of A., and, with violence and putting A. in fear, drives away his horse, cattle, or sheep, he commits robbery." The better expression is, that a taking in the presence of an individual (of course, their being put in fear) is to be deemed a taking from his person.' * * *"

Appellant also contends that the State failed to prove the currency taken from Mrs. Harris constituted "greenbacks" as alleged in the indictment. The indictment charged that appellant "feloniously took thirty-three dollars in greenbacks, the exact denominations of which are unknown to the Grand Jury, all lawful currency of the United States of America, of the value of thirty-three dollars." Mrs. Harris testified that the currency stolen was "green backs, I suppose" and that the only kind of money she knew of was "green bills."

The Supreme Court in Wesley v. State, 61 Ala. 282, addressed itself to this very question when it said:

"* * * 'Greenbacks' is but a nickname, originally, or slang word, derived from the color of the engraving on the backs of the currency so denominated, and not either the legal designation, or a proper description of the things alleged to have been feloniously taken. The fact that the word has, from its conveniency,

come into common use, does not make it by itself, without connection with something else indicating the notes called by that name, a proper denomination for them in an indictment.—Grant v. The State, 55 Ala. 201.

"However, we can not hold that the indictment is, on that account, fatally defective. The crime it charges against the defendant is robbery. This is defined to be 'the felonious and forcible taking of the property of another from his person, or in his presence, against his will by violence or by putting him in fear.'—2 Whar.Amer.Cr.Law, § 1696, (6th ed.); Archbold, 418. In this offense the kind and value of the property so taken, is not material because force or fear is its main element. Hence, when a man was knocked down and his pockets rifled, but the robbers found nothing but a piece of paper having a memorandum on it, an indictment for robbing him of the paper was held to be maintainable. It was held sufficient if of some value, however little, to the person robbed.— Rex v. Bingley, 5 Car. & P. 602; State v. Burke, 73 N.C. 83.

"In this cause, the indictment charges and the verdict ascertains that these 'greenbacks,' described to be 'thirty dollars of greenbacks,' &c., were the property of one Hamilton, and were feloniously taken by defendant, from said Hamilton's person against his will by violence to his person, or by putting him in fear. This was robbery."

The indictment charged that the exact denominations of the money taken were unknown to the grand jury. Appellant argues a variance here also because the evidence showed the grand jury did in fact have such knowledge.

The following occurred on cross-examination of Mrs. Harris:

"Q Did you appear before the grand jury in this case?

"A Yes, I did.

"Q That is an arrangement whereby just the prosecuting witnesses come in and testify?

"A Yes.

"Q The defendant wasn't there?

"A No.

"Q At that time, did you tell the grand jury that the bills were a twenty, a ten, and three ones?

"A Yes.'

At the close of the State's case, the defense, out of the presence of the jury, made a motion to exclude the State's evidence based on this alleged variance and the court recalled Mrs. Harris to clarify the point. The following occurred:

"Q Do you recall definitely whether you told the Grand Jury the exact denominations of this money?

"A At the Grand Jury I said I *thought* it was a twenty, a ten, and three ones." (Emphasis added.)

Where an indictment alleges the description of money as being unknown, to the grand jury, a conviction cannot be sustained, where the proof shows that the description was in fact known to the grand jury. This would result in a variance between the averment and the proof. James v. State, 115 Ala. 83, 22 So. 565; Young v. State, 20 Ala.App. 219, 101 So. 469, cert. denied 211 Ala. 614, 101 So. 470.

The question is not whether Mrs. Harris knew the exact denominations of the bills, but whether she so informed the grand jury. We are not prepared to hold on this record that the grand jury in fact knew the exact denominations of the money taken.

In his summation to the jury, the prosecutor made three statements to which defense counsel objected. All of these objections were sustained by the court, and in each instance where proper motion was

made the objectionable argument was excluded.

During the course of the prosecutor's summation, the following occurred:

"MR. YOUNG: They have talked about the State not proving this, and the State not proving that. Let me tell you something. I think I have a right to say this. The evidence and matters that are obtained by other states, and the facts contained in their records are not available—

"MR. WALKER: May it please the Court, we object to that argument. The Court is aware that if there is a record of judgment in another case and in another state that the Solicitor knows that he can bring into this Court and we ask that the Jury be instructed not to consider that statement of the Solicitor.

"THE COURT: The objection is sustained, and the Jury will not consider that statement by the Solicitor."

Further, in the argument the following occurred:

"MR. YOUNG: They know in view of the recent Supreme Court ruling, if we had put him in a line up, you would have heard them howling—

"MR. WALKER: Again, we must object to the statement of the Solicitor. There is no recent Supreme Court ruling that abolishes lineups, they are still available. And this would be unfair for him to indicate that they are not.

"THE COURT: Sustain the objection."

Further, in the argument the following occurred:

"MR. YOUNG: How would you feel if you were sitting right here in this chair? If that had happened at your home? I am afraid that I am not man enough to handle myself as well as Mr. Harris has. I am afraid—well, I am just glad it didn't happen in my house.

"MR. WALKER: Your Honor, I must object to the line of argument the Solicitor is again making, indicating by inference that one should use violence or more extreme measures than the law allows.

"MR. YOUNG: I was decrying that, Your Honor. I was saying that I am afraid I am not man enough to have gone by the law.

"MR. WALKER: It is nothing in the world, but by indirection to appeal to the passions of this Jury.

"THE COURT: Gentlemen, you will consider the evidence in the case, and the argument that the Solicitor makes in line with the evidence.

"MR. YOUNG: I am sorry, Your Honor.

"THE COURT: You will completely ignore anything that appeals to your passion."

The State does not desire the conviction of a person charged with a crime unless the jury is convinced beyond a reasonable doubt that the defendant is guilty as charged, unaided by impassioned appeals of the prosecutor and objections to such argument should be sustained.

■ The summation or final argument is the least restrictive stage of the trial insofar as counsel's words and conduct are concerned. Of necessity, only broad general rules of prohibition are laid down. Where these rules are violated, proper objection should be sustained and if need be the trial judge should do his best to instruct the jury to disregard the objectionable matter. He is given much discretion here, for only he and not the appellate court, can hope to surmise the impressions made on the jury. We do not consider the effect of these arguments ineradicable.

For the foregoing reasons, we conclude that the judgment below is due to be

Affirmed.