313 So.2d 566

**Robert T. LEWIS, alias**

v.

**STATE.**

**5 Div. 273.**

Court of Criminal Appeals of Alabama.

April 22, 1975.

Rehearing Denied May 27, 1975.

Robert M. Harper, Auburn, for appellant.

William J. Baxley, Atty. Gen., and Rosa G. Hamlett, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Lewis was convicted of robbery and sentenced to thirteen years in the penitentiary. Prior to arraignment, he was found to be indigent and the court appointed counsel to represent him at all stages of the trial in the court below. He pleaded not guilty. He is in this court with a free transcript and trial counsel was appointed to represent him on appeal.

There is no dispute as to the facts in this case. The case went to the jury on the evidence adduced by the state. Appellant did not testify and offered no evidence in his behalf.

Around 3:00 A.M. on September 24, 1974, the lone operator of the Crown Central Service Station located at 1625 Pepperell Parkway in Opelika, Alabama, was robbed by two black men of a sum of money in excess of $400.00. One of the robbers grabbed the operator by the shirt, put a pistol to his neck and demanded the keys to the safe and cursed and threatened to blow his brains out. The operator gave him the keys to the safe. About this time the other robber came in the station and was given the keys to open the safe. The safe was opened by the second man while the first man held the pistol on the operator. The money box was removed from the safe and the operator was forced to give them the money he had on his person. The first man gave the pistol to the second man and told him to "keep this old _____ _____ _____ _____ right here until I get the car going", and "be _____ _____ sure you kill him if he makes a move." They forced the operator to lie on the floor, but

as soon as he heard the motor of the car running he got up and went to the door of the service station and observed the car backing without the lights on. The outside of the service station was well lighted and the operator saw the tag on the car. It was a Georgia tag and the word "DeKalb" on the tag was bent at the bottom in an attempt to prevent anyone from seeing what county in Georgia had issued the tag. The operator recognized the car as he had put gasoline in it on two occasions within three or four days prior to the date in question. He also observed there were several more black men in the car as it left the service station. The operator immediately called the Police Department and reported the robbery.

Two officers from the Opelika Police Department responded to the robbery report and met the car on the highway. The officers blocked the car and stopped it. They drew their weapons and ordered all occupants of the car to get out and put their hands on top of the car. The officers radioed for back-up units and several police officers and sheriff's deputies came to the scene. There were five black men in the car and they were searched for weapons. They were arrested and handcuffed and carried to the station house. The officers searched the car and found a pistol under the front seat on the driver's side. They found a twelve gauge sawed-off shotgun and a .410 bolt action shotgun on the floorboard in the back of the car. They also found a money box on the floorboard on the passenger side of the front of the car. The pistol and both shotguns were loaded.

The service station operator went to Police Headquarters and identified the money box. The time was 4:00 A.M. on the morning of the robbery.

The five men were searched as they were being booked at the station house.

Each had live shotgun shells in his pockets. Appellant had three twelve gauge shotgun shells in his pockets.

Appellant was given the Miranda rights and warnings and signed a waiver of counsel form as follows:

"SX #5 10–22–74
WTB

"YOUR RIGHTS

"PLACE OPELIKA POLICE DEPT.
DATE 9/4/74
TIME 11:05 AM
EDUCATION Completed 6th grade

"BEFORE WE ASK YOU ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS.

"YOU HAVE THE RIGHT TO REMAIN SILENT.

"ANYTHING YOU SAY CAN BE USED AGAINST YOU IN COURT.

"YOU HAVE THE RIGHT TO TALK TO A LAWYER FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS AND TO HAVE HIM WITH YOU DURING QUESTIONING.

"IF YOU CANNOT AFFORD A LAWYER, ONE WILL BE APPOINTED FOR YOU BEFORE ANY QUESTIONING IF YOU WISH.

"IF YOU CANNOT AFFORD A LAWYER, ONE WILL BE APPOINTED FOR YOU BEFORE ANY QUESTIONING IF YOU WISH.  (sic)

"IF YOU DECIDE TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU WILL STILL HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME.  YOU ALSO HAVE THE RIGHT TO STOP ANSWERING AT ANY TIME UNTIL YOU TALK TO A LAWYER.

"WAIVER OF RIGHTS

"I HAVE READ THIS STATEMENT OF MY RIGHTS AND I UNDERSTAND WHAT MY RIGHTS ARE.  I AM WILLING TO MAKE A STATEMENT AND ANSWER QUESTIONS.  I DO NOT WANT A LAWYER AT THIS TIME.  I UNDERSTAND AND KNOW WHAT I AM DOING.  NO PROMISES OR THREATS HAVE BEEN MADE TO ME AND NO PRESSURE OR COERCION OF ANY KIND HAS BEEN USED AGAINST ME.

"SIGNED   Robert Lewis

"WITNESS Nick Abett
"WITNESS Dan C. Davis
"TIME        11:08 AM        "

Appellant made the following oral statement to a police detective:

"He told me, he said, 'We all came down from Atlanta yesterday about, or last night about 10:00 o'clock p. m.'  And said, 'We was riding around and we went to a "Mr. Quick" store and bought some beer.'  And he said, 'Then we took

Elder James Knight home and then we went back and parked at the Thomas Pharmacy. After leaving the Thomas Pharmacy,' said, 'we went back and picked Elder James Knight up to drive for us.' And then he said they rode around some more and at that time I made a statement to him, I said, 'Well, it was pretty dumb way to pull a robbery, to park right behind the place, and get out and go in and rob it,' and he said, 'We didn't park behind no place.' Said, 'We put them out about two blocks away' and he said, 'We didn't park behind no service station.' "

A voir dire examination was conducted out of the presence and hearing of the jury, and at the conclusion of this hearing, the court held the statement was voluntarily made. After proper predicate was laid, the above quoted statement was allowed in evidence.

Appellant's only claim of error to reverse is the action of the trial court in excluding the police officers from the rule which was duly invoked.

In Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, the court said:

"The sequestration of witnesses under 'The Rule' while rarely to be withheld upon request, is nevertheless discretionary with the trial court. And, where, for instance, a witness has remained in the courtroom in violation of the rule, the trial court's decision as to his testifying or not is not open to review. Wilson v. State, 52 Ala. 299; Teague v. State, 245 Ala. 339, 16 So.2d 877. Moreover, the efficacy of sequestration—which can only occur during the trial—is probably overrated. The law has moved from oath-taking to cross examination in its search for the truth."

In DeFranze v. State, 46 Ala.App. 283, 241 So.2d 125, the court held:

"Appellant claims error in the court's refusal to put the prosecutrix and two police officers under the rule. The exclusion of witnesses from the courtroom is entirely a matter of discretion with the trial court, and not of right. McLean v. State, 16 Ala. 672; Teague v. State, 245 Ala. 339, 16 So.2d 877; Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, cert. denied 266 Ala. 694, 96 So.2d 178, cert. denied 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed. 2d 414. This discretion is not reviewable. Riley v. State, 88 Ala. 193, 7 So. 149; Roberts v. State, 122 Ala. 47, 25 So. 238; Beddow v. State, supra. And it is within the discretion of the trial court to excuse some witnesses and not others. Brooks v. State, 146 Ala. 153, 41 So. 156; McDowell v. State, 238 Ala. 101, 189 So. 183. This seems to be particularly true in the case of law enforcement officers. Wright v. State, 1 Ala. App. 124, 55 So. 931; Ledbetter v. State, 34 Ala.App. 35, 36 So.2d 564, cert. denied 251 Ala. 129, 36 So.2d 571."

The above quotations serve to dispose of appellant's claim of error.

This case is affirmed.

Affirmed.

All the Judges concur.