[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 865 
The appellant was convicted for rape and sentenced to thirty years' imprisonment. Ten separate grounds for reversal of the conviction are asserted on appeal.
 I
It was not error for the trial judge to excuse the police officer in charge of the investigation from a general order excluding witnesses from the courtroom. It is within the discretion of the trial judge to excuse some witnesses and not others from the operation of "the rule" of exclusion. That discretion has been upheld in the following cases involving the excusal of law enforcement officers. Webb v. State, 100 Ala. 47,14 So. 865 (1894); Lewis v. State, 55 Ala. App. 140,313 So.2d 566 (1975); James v. State, 52 Ala. App. 389,293 So.2d 305 (1974); Goodman v. State, 52 Ala. App. 265, 291 So.2d 358
(1974); Browning v. State, 51 Ala. App. 632, 288 So.2d 170
(1974); Denson v. State, 50 Ala. App. 409, 279 So.2d 580 (1973);DeFranze v. State, 46 Ala. App. 283, 241 So.2d 125 (1970); Elrodv. State, 281 Ala. 331, 202 So.2d 539 (1967); Ledbetter v.State, 34 Ala. App. 35, 36 So.2d 564, cert. denied, 251 Ala. 129, 36 So.2d 571 (1948); McKenzie v. State, 26 Ala. App. 295,158 So. 773 (1935); Wright v. State, 1 Ala. App. 124, 55 So. 931
(1911). See also C. Gamble, McElroy's Alabama Evidence, § 286.01 (3rd ed. 1977).
While the discretion of the trial judge is not an arbitrary one and must not be abused, permitting one law enforcement officer to remain in court during the presentation of the evidence, notwithstanding the rule to exclude witnesses, is a common and usual practice.
At trial defense counsel gave no reason for his objection to the officer's presence in the courtroom. In the absence of any clear showing of the abuse of the discretion of the trial court and actual prejudice to the appellant we find no error.
 II
Error is also predicated upon the in-court identification of the appellant by the prosecutrix.
The rape occurred between 10:30 and 12:00 on the night of August 10, 1977. At 8:00 the next morning the prosecutrix went to the Auburn Police Department, reported *Page 866 
the offense and gave a description of her assailant. A detective then took her to a small room where she viewed the appellant through a "two way mirror". The appellant was in custody on another charge when the showup took place. The prosecutrix testified that she "insisted on seeing the person who was in jail", that she "immediately recognized" him and that she was never shown any photograph before the identification procedure.
This court has previously considered the "showup", its propriety, and its admissibility in evidence. Brazell v. State, Ala.Cr.App., 3 Div. 849, 369 So.2d 25 (Ms. June 20, 1978).
 "Though the practice of showing a suspect singly to persons for purposes of identification, and not as part of a lineup, has been widely condemned, Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967), the admission of evidence of a showup without more does not violate due process of law. Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977); Annotation: Admissibility of Evidence of Showup Identification as Affected by Allegedly Suggestive Showup Procedures, 39 A.L.R.3d 791 (1971).
 "Convinced of the dangers of eyewitness identification, the United States Supreme Court has established constitutional and procedural safeguards surrounding the use of such testimony. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149
(1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Stovall, supra; Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401
(1972); Manson, supra; Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970).
 "Whether an out-of-court identification procedure has violated due process depends upon the `totality of the circumstances'. Stovall, supra; Simmons v. U.S., 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968); Coleman, supra; Biggers, supra. This totality of the circumstances test is the standard in deciding whether an identification procedure is unnecessarily suggestive and conducive to irreparable mistaken identification. Caver v. Alabama, 537 F.2d 1333 (5th Cir. 1973). Under this test the factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal act at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation. Biggers, 93 S.Ct. 382; Robinson v. State, 45 Ala. App. 236, 228 So.2d 850 (1969). Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
 "In determining the constitutional adequacy of pretrial identification procedures and the admissibility of identification testimony, the central question is whether, under the totality of the circumstances, the identification was reliable. Manson, supra. This determination involves the application of a two-pronged test.
 "(T)he required inquiry is two-pronged. The first question is whether the initial identification procedure was `unnecessarily' (Stovall) or `impermissibly' (Simmons) suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been `unnecessarily' or `impermissibly' suggestive was so `conducive to irreparable mistaken identification' (Stovall) or had such a tendency `to give rise to a very substantial likelihood of irreparable misidentification' (Simmons) that allowing the witness to make an in-court identification would be a denial of due process. United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir. 1970).
 "Suggestiveness is inherent in the showup identification procedure. Wall, Eye-Witness Identification In Criminal Cases, p. 28. Nevertheless, prompt, on-the-scene confrontation may be consistent with good police work. Cornelius v. State, *Page 867 49 Ala. App. 417, 272 So.2d 623 (1973); Payne v. State, 48 Ala. App. 401, 265 So.2d 185, cert. denied, 288 Ala. 748, 265 So.2d 192, cert. denied, 409 U.S. 1079, 93 S.Ct. 703, 34 L.Ed.2d 669 (1972); Robinson v. State, 55 Ala. App. 658, 318 So.2d 354 (1975). One-on-one confrontations conducted shortly after the commission of the crime may be justified for they allow the `fresh' identification before memory has dimmed or the suspect has changed his clothing, the prompt release of innocent persons, and the continuation of the search for the perpetrator with a minimum of delay. Wall, p. 38. For these considerations to be effective, the on-the-scene identification must be prompt. Carter v. State, Ala.Cr.App., 340 So.2d 94, 98 (1976). (`Our consideration of Robinson, the supporting authorities cited therein, and other authorities on the subject, convinces us that most, if not all, of the applicable cases have involved periods of time of less than an hour between the crime and the confrontation.')"
* * * * * *
 "It is mere sophistry to argue that the showup was not unnecessarily suggestive. A showup by its inherent nature is suggestive because the witness is given no other choice. However it is permitted where conducted promptly after the commission of a crime or demanded by necessity, emergency or exigent circumstances."
* * * * * *
 "If, despite the violation of due process standards, the prosecution can establish by clear and convincing evidence that the in-court identification testimony, rather than stemming from the unfair pretrial confrontation, has an independent source, the in-court testimony need not be excluded. Wade, 87 S.Ct. 1939."
There is no contention that the showup was unnecessarily suggestive or tainted apart from that suggestiveness inherent in any showup procedure.
The testimony of the prosecutrix is clear and convincing that her in-court identification of the appellant was based on an independent source and did not stem from any unfair pretrial confrontation. When she saw her assailant standing near her bed she "recognized him immediately. He had been at my house February before." Though the prosecutrix gave the police a description of her assailant, the record contains no description or picture of the appellant and hence we cannot determine the degree to which the description given by the prosecutrix fit the appellant. However we note that on cross examination of the prosecutrix on this point defense counsel attempted to impeach her description only by showing that the appellant was "in the vicinity of six foot or six foot-one" with his shoes on while the victim described her assailant as approximately five foot eight inches with his shoes off. This discrepancy goes to the credibility of the victim's identification rather than its admissibility. The prosecutrix never waivered in her identification of the appellant.
There is simply no evidence that the showup tainted the victim's in-court identification. Liptroth v. State,342 So.2d 959 (Ala.Cr.App.), cert. denied, 342 So.2d 961 (1977); Thomasv. State, 50 Ala. App. 227, 278 So.2d 230 (1973). The appellant's argument that the one man showup identification procedure is a per se violation of due process is not supported by legal precedent. The argument that this particular procedure violated the appellant's constitutional rights is not supported by the facts.
 III
The appellant asserts that it constituted "gross prosecutorial misconduct" and denied him his constitutional right to a public trial for the District Attorney to order a spectator not to return to the courtroom during the trial.
During the cross examination of the prosecutrix there was an off-the-record discussion between the Court and the attorneys for both sides. Apparently the District Attorney mentioned that a spectator was causing a problem and the trial judge "asked him to speak to the spectator in this *Page 868 
regard". The jury was then sent back to the jury room. Outside of the courtroom and out of the hearing and presence of the jury, the District Attorney told the spectator to "stay out of the courtroom unless called as a witness". The prosecutor stated that his action was prompted because the spectator was sitting close to the jury and "snickering" at the testimony of the prosecutrix. Neither the judge nor defense counsel observed or overheard any of this conduct.
When the District Attorney announced ready to proceed and informed the court of his actions, defense counsel objected and the trial judge immediately ordered a recess in order that the spectator could be found and returned to the courtroom. When the spectator was not found during that recess defense counsel moved for a mistrial and the trial judge ordered another recess to allow additional time to find the spectator.
Later that same afternoon the spectator, Howell Rowell, returned to the courtroom. He was placed under oath and testified that he was leaving the courtroom at approximately 2:25. When he got to the door the District Attorney told him that he could not return. Mr. Rowell stated that he did not return to the courtroom until 4:30 when the judge sent for him and that because of the prosecutor's remarks he was afraid to return. He testified that he was a friend of the appellant's and that he found the testimony of the prosecutrix "certainly amusing".
During Mr. Rowell's absence a newspaper reporter and other spectators were present in the courtroom. Though asserted in brief there is no evidence that Mr. Rowell was the only friend of the appellant in the courtroom.
The trial judge overruled the defense motion for a mistrial and instructed Mr. Rowell that he was welcome to remain in the courtroom, that the trial was open to the public, and that he had done nothing to curtail that right.
The right to a public trial is guaranteed by Section 6 of the Alabama Constitution of 1901. The words "public trial" mean "trials as usually and generally conducted, where the courthouse is open to practically anyone who may wish to attend, and do not mean one where the public is so generally excluded as to confine the attendants to those engaged and interested in the trial and the relatives of the parties". Wadev. State, 207 Ala. 1, 2, 92 So. 101, 102 (1921).
 "`The constitutional right to a public trial is not a limitless imperative.' Lacaze v. United States, 5 Cir., 1968, 391 F.2d 516, 521. The fact that some members of the public were barred from the courtroom does not necessarily mean that a denial of a public trial has occurred; the `decision must turn on the particular circumstances of the case, and not upon a question-begging because abstract and absolute right to a "public trial".' Levine v. United States, 362 U.S. 610, 616-617, 80 S.Ct. 1038, 1043, 4 L.Ed.2d 989
(1960). See also 6 Wigmore on Evidence § 1835 at 338." Aaron v. Capps, 507 F.2d 685, 687 (5th Cir.), cert. denied, 423 U.S. 878, 96 S.Ct. 153, 46 L.Ed.2d 112 (1975).
The requirement of a public trial "is not absolute in the sense that a defendant has the right to have any particular person present under all circumstances during the course of the trial". United States ex rel. Laws v. Yeager, 448 F.2d 74, 80
(3rd Cir. 1970).
It is generally recognized that a judge has the inherent power to preserve order and decorum in the courtroom and that in the exercise of such power he may eject spectators without infringing an accused's right to a public trial. 48 A.L.R.2d 1436 at 1448. "If the conduct of a spectator admitted to a criminal trial interferes with the administration of justice, he may be removed. Such removal does not constitute a denial of any right of the public or the accused to a public trial."Williams v. State, 57 Ala. App. 158, 163, 326 So.2d 686, 691
(1975), cert. denied, 295 Ala. 428, 326 So.2d 692 (1976). An order excluding certain spectators from the courtroom does not deny the accused a public trial where it appears to the trial judge that a witness was being intimidated by certain persons in *Page 869 
the courtroom. United States ex rel. Bruno v. Herold,408 F.2d 125 (2d Cir. 1969), cert. denied, 397 U.S. 957, 90 S.Ct. 947,25 L.Ed.2d 141 (1970); United States ex rel. Orlando v. Fay,350 F.2d 967 (2d Cir. 1965), cert. denied, 384 U.S. 1008,86 S.Ct. 1961, 16 L.Ed.2d 1021 (1966).
A similar factual situation was present in Commonwealth v.Burton, 459 Pa. 550, 330 A.2d 833 (1975). There, as here, the District Attorney ordered a spectator out of the courtroom.
 "(O)n the fifth day of the seven-day trial, when Mrs. Williams (the Commonwealth's main witness) was scheduled to testify, the district attorney requested court personnel to keep appellant's wife out of the courtroom, explaining that appellant's wife had threatened Mrs. Williams. The district attorney also ordered all members of the Black Panthers kept out of the trial while Mrs. Williams testified. Pursuant to this request, other members of appellant's family were also accidentally excluded. When this came to light, on the day following Mrs. Williams' testimony, appellant's counsel moved for a mistrial, which motion was denied. While it is true, as appellant argues, that the district attorney had no authority to exclude spectators, after the trial judge was made aware of the situation, he ratified the actions of the district attorney at least insofar as appellant's wife and members of the Black Panthers were concerned. This presumably was based upon the judge's determination that appellant's wife and the Black Panthers might cause the witness, Mrs. Williams, to change her testimony out of fear. See United States ex rel. Laws v. Yeager, 448 F.2d 74 (3rd Cir. 1971), Commonwealth v. Principatti, 260 Pa. 587, 104 A. 53
(1918). With regard to those members of appellant's family who had been excluded by mistake, we note that the situation was immediately corrected when it was brought to the attention of the court. Under the circumstances, we do not believe that appellant was denied the right to a public trial." Burton, 330 A.2d at 837 (emphasis added).
While we recognize the general rule that, where the accused has been denied a public trial, prejudice will be presumed without the burden being placed upon the accused to show actual prejudice, 48 A.L.R.2d at 1454, no argument has been advanced that Mr. Rowell's absence injured or prejudiced the appellant. Under the circumstances of this case we do not think that the exclusion of this one spectator denied the appellant his right to a public trial.
 IV
On cross examination defense counsel asked the prosecutrix if she had ever seen a psychologist on a professional basis. Receiving an affirmative response he then established that she had never seen a psychologist or a psychiatrist prior to August of 1977, the month she was raped.
This inquiry properly allowed the State to show that the prosecutrix had received psychiatric or psychological helpafter August of 1977. Brothers v. State, 236 Ala. 448, 452,183 So. 433 (1938); Kroell v. State, 139 Ala. 1, 36 So. 1025
(1904).
A party may go into any matter gone into by the adverse party and explain anything to his detriment. Gilbert v. City ofMontgomery, 337 So.2d 140 (Ala.Cr.App. 1976); Craven v. State,22 Ala. App. 39, 111 So. 767 (1927). A party who has brought out evidence on a certain subject has no valid complaint as to the action of the trial court in allowing his adversary to introduce evidence on the same subject. Brock v. State,54 Ala. App. 310, 307 So.2d 707 (1975); Mitchell v. State,42 Ala. App. 41, 151 So.2d 752, cert. denied 275 Ala. 696,151 So.2d 761 (1962).
 V
It was not error to allow the prosecutrix to testify to the details of an incident occurring on her front porch on a night in February, 1977, when the appellant exposed himself to her. *Page 870 
In a rape charge, the State may prove, as tending to show a sexual passion in the accused for the alleged victim, acts by the accused prior to the alleged rape indicating a sexual passion for the victim. Barnes v. State, 88 Ala. 204, 7 So. 38
(1890); Pope v. State, 10 Ala. App. 91, 64 So. 526 (1914). The identity exception to the general rule excluding evidence of prior and subsequent crimes when their only probative value is to show in the defendant a tendency or disposition to commit the now-charged crime "seems to have taken on a more liberal definition when the defendant is charged with a sex crime such as rape. In such cases the courts seem to allow proof of other similar crimes by the accused if they, in any way, go to identify him as the person who committed the now-charged crime." McElroy § 70.01 (22)(b).
"If the accused's commission of another crime is admissible . . ., the State may prove in meticulous detail the manner in which the accused committed the other crime." McElroy § 69.02 (8). See Bynum v. State, 348 So.2d 804 (Ala.Cr.App.), cert. quashed, 348 So.2d 828 (Ala. 1976); McDonald v. State,57 Ala. App. 529, 329 So.2d 583, cert. quashed, 295 Ala. 410,329 So.2d 596 (1975).
Though not involving evidence of a prior criminal act, inMincy v. State, 262 Ala. 193, 78 So.2d 262 (1955), it was held that, in a prosecution for rape, the testimony of the prosecutrix as to the events which involved the defendant and which happened on the day prior to the offense was admissible on the question of identification. This evidence was admissible under the rule that antecedent circumstances tending to shed light on the transaction or elucidate the facts or show preparation to commit the crime are always admissible in evidence.
Additionally on cross examination of the prosecutrix defense counsel brought out the fact that she had not filed a report with the police with regard to the incident in February. At this point in the trial there had been no indication in any of the testimony that there could or should have been anything reported to police concerning the encounter between the prosecutrix and the appellant in February. This opened the door for the State, on redirect examination, to go into this matter and show the circumstances connected with it. Thames v. State,10 Ala. App. 210, 64 So. 648 (1914). On redirect examination the State may explain or rebut discrediting facts brought out by the defense. Payne v. Roy, 206 Ala. 432, 90 So. 605 (1921);Jones v. State, 22 Ala. App. 141, 113 So. 478 (1927); Whatley v.State, 144 Ala. 68, 39 So. 1014 (1906).
 VI
The appellant contends that the consent to search was not knowingly, intelligently, and voluntarily given and that a search warrant was required.
Proper consent may constitute a waiver of Fourth Amendment rights, Zap v. United States, 328 U.S. 624, 66 S.Ct. 1277,90 L.Ed. 1477 (1946), and makes a search warrant wholly unnecessary. Toston v. State, 333 So.2d 161 (Ala.Cr.App. 1976). The voluntariness of consent to search is a question of fact to be determined from the totality of all the circumstances.Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041,36 L.Ed.2d 854 (1973); United States v. Smith, 543 F.2d 1141 (5th Cir. 1976).
The failure to inform the accused of his right to refuse is a factor to consider in determining voluntariness but is not to be given controlling significance. United States v. Smith,543 F.2d 1141, 1143 (5th Cir. 1976). "While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine quanon of an effective consent." Schneckloth, 412 U.S. at 227,93 S.Ct. at 2048. The burden of proving that the consent was, in fact, freely and voluntarily given rests upon the prosecution.Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788,20 L.Ed.2d 797 (1968). "The State must prove that there was no duress or coercion, express or implied. The consent must be unequivocal and specific, and freely and intelligently given. There must be clear and positive testimony." *Page 871 Hardy v. State, 53 Ala. App. 75, 78, 297 So.2d 399, 402 (1974).
Here the trial court, on conflicting evidence, found that the consent to search was voluntarily given. We apply the same rules in reviewing a trial judge's determination of the voluntariness of a consent to search as we do in reviewing his determination of the voluntariness of a confession. Thus when conflicting evidence is presented on the issue of the voluntariness of a consent to search and the trial judge finds that the consent was voluntarily given, great weight must be given his judgment. This finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Sullivan v. State, 340 So.2d 878,880-881 (Ala.Cr.App.), cert. denied, 340 So.2d 881 (Ala. 1976).
Though it is argued that the appellant was intoxicated and had been without sleep for some time there is also credible evidence to the contrary and sufficient to support the finding of voluntariness made by the trial judge.
 VII
Over the objection of defense counsel Detective Downing was permitted to testify that the appellant was arrested and booked on a charge of indecent exposure on the morning after the rape. It was on this charge that the appellant was being held when viewed by the prosecutrix.
Any error in the admission of this testimony was cured when defense counsel, in attempting to prove the legal insanity of the appellant at the time of the crime, introduced the testimony of Dr. Edwin Conrad Seger, Chief Psychologist on the Forensic Unit at Bryce Hospital, that the appellant "got arrested several times as being a peeping Tom and `voyeurism', it's called"; that "he's also been arrested several times for indecent exposure" and that the appellant has a "long history" of "peeping Tom, exhibitionism, and things of that nature". This testimony of the appellant's own witness in response to questions from his own attorney eradicated any possible prejudice that may have resulted from Detective Downing's testimony. Strickland v. State, 151 Ala. 31, 44 So. 90 (1907);Thompson v. State, 53 Ala. App. 484, 301 So.2d 248 (1974);McKenzie v. State, 33 Ala. App. 7, 33 So.2d 484, cert. denied,250 Ala. 178, 33 So.2d 488 (1948).
 VIII
The appellant contends that the State failed to prove a sufficient degree of force to constitute rape and therefore his motion to exclude the State's evidence was due to be granted. In brief he argues that:
 "The evidence was to the effect that there was no fight between the alleged victim and the Defendant; that there was no affirmative evidence of a struggle; that there was no evidence that any blows or punches were exchanged or inflicted; that there was no evidence that the prosecuting witness scratched or attempted to scratch the Defendant; that there was no evidence that the alleged victim screamed out in despair or hollered for help; that there was no evidence that the Defendant offered to kill the alleged victim or do her serious bodily harm. In fact, the alleged victim testified that the only thing that the Defendant said to her which could be construed as a threat was, `keep quiet and you won't get hurt'."
The prosecutrix was startled from her sleep in her own bedroom by a male who was standing near her bed. From what she could see of the individual, he was "stripped to the waist". The prosecutrix testified that she "was so dumbfounded and it happened so quickly — he was on top of me immediately". She was told to "keep quiet and you won't get hurt". The appellant "moved", "pulled", "dragged" and "wrestled" her around on the bed because she *Page 872 
resisted by "locking" her legs and thighs. She tried to push herself away and thought about screaming but did not think that she would be heard. The prosecutrix testified that the appellant had her "pinned down" and it was impossible to hit him. She stated that she was in a state of shock and was bruised on her arms and legs though a physician found no evidence of any bruises the next day. The prosecutrix told the physician that there was "no struggle" and his report states that "no nail bed specimen is taken as the patient states she did not scratch or resist in this way".
To constitute rape, the degree of force used need not be such as to place the victim under such reasonable apprehension of death or bodily harm as to overpower her will, it being sufficient that she was under such duress that the act was accomplished against her consent. Brummitt v. State,344 So.2d 1261 (Ala.Cr.App. 1977); Cole v. State, 19 Ala. App. 360,97 So. 891, cert. denied, 210 Ala. 179, 97 So. 895 (1923). "The force necessary to be used, to constitute the crime of rape, need not be actual, but may be constructive or implied. An acquiescence to the act obtained through duress or fear of personal violence, is constructive force, and the consummation of unlawful intercourse by the man thus obtained would be rape."Shepherd v. State, 135 Ala. 9, 12, 33 So. 266, 267 (1903).
 "An acquiescence obtained by duress, or fear of personal violence, will avail nothing, the law regarding such submission as no consent at all. If the mind of the woman is overpowered by a display of physical force, through threats, expressed or implied, or otherwise, or she ceases resistance through fear of great harm, the consummation of unlawful intercourse by the man would be rape. 1 Whart. Cr. Law, § 557; 2 Bishop Cr. Law, (7th Ed.), § 1125; 3 Greenl.Ev., (14th Ed.), § 211." McQuirk, 84 Ala. 435, 437, 4 So. 775, 776 (1887).
The offense of rape is complete when unlawful intercourse is accomplished by overcoming resistance, and procuring submission by means of threats, though there may be no intention in fact to apply actual force. Taylor v. State, 249 Ala. 130,30 So.2d 256 (1947); Norris v. State, 87 Ala. 85, 87, 6 So. 371 (1888).
 "While the law arms a woman who is assaulted by a man with the intent to ravish her with the right to stand her ground, and, if necessary, to kill her assailant to protect her person from the gratification of his lust, the law does not compel her so to do. All of the circumstances surrounding the commission of the alleged crime are to be considered, and whether the prosecutrix does or does not repel force by force, or resist her assailant to the uttermost, if the act of penetration is actually accomplished by what, in law, amounts to legal force, and against the will of the prosecutrix, the defendant is guilty of rape. The relative size of the parties, the age of each, their social and racial differences, and the absence of efforts on the part of the prosecutrix to avoid the act are all matters to be weighed by the jury on the question as to whether all the necessary elements of the crime exist, but when all the elements of the crime do exist the crime is one of rape, although the prosecutrix may have made no effort to resist." Herndon v. State, 2 Ala. App. 118, 125-126, 56 So. 85, 87 (1911).
Under the facts outlined the State presented prima facie evidence of the elements of rape and the trial judge properly submitted the case to the jury.
 IX
The appellant's objection to the closing argument was sustained. There was no motion to exclude and no request for the court to specifically instruct the jury not to consider the improper argument in their deliberations. Boles v. State,19 Ala. App. 184, 186, 95 So. 909 (1923). There was no motion for new trial. Since no adverse ruling was obtained in the trial court there is nothing for this court to review. Moore v.State, 48 Ala. App. 719, 722, 267 So.2d 509 (1972). *Page 873 
 X
The trial judge denied the appellant's pretrial motion to take the deposition of the prosecutrix. This motion was made pursuant to that portion of Section 12-21-260 (a), Code of Alabama 1975, which provides:
 "The defendant may take the deposition of any witness . . . where the defense, or a material part thereof, depends exclusively on the testimony of the witness."
In the motion it was asserted that "the Defendant has advised this attorney that he has no remembrance of the events which allegedly transpired on the date in question; therefore, at this stage, the defense depends exclusively on the testimony of the said" prosecutrix. In denying the request the trial judge noted:
 "The defendant's trial has been continued pending a psychological examination of the said defendant and there is no showing that the . . . (prosecutrix), is unavailable for examination by the defendant, and further, the showing is insufficient that the defense rests exclusively on the testimony of the said Nancy Bush. Rather, it appears that . . . (the prosecutrix) is the primary witness for the prosecution, rather than the defendant. It further appears that the said . . . (prosecutrix) is not absent from the State of Alabama."
We uphold the ruling of the trial judge denying the motion. Here the defense or a material part thereof did not depend exclusively on the testimony of the prosecutrix. At trial the defense was not consent. The appellant testified that he had never seen the prosecutrix before and that, although highly intoxicated on the date the crime was committed, he never raped anyone as far as he remembers. The request was properly denied.
We have searched the record and finding no error prejudicial to the appellant we affirm the judgment of the trial court.
AFFIRMED.
All Judges concur.