The defendant was indicted and convicted for robbery. Sentence was thirty years' imprisonment.
 I
Initially the defendant contends that the prosecution failed to prove a prima facie case because it failed to prove (1) the ownership of the stolen property, (2) who had possession and control of the property before it was stolen, and (3) that the property was taken from the person of Roger Terry, or from his presence, (4) by violence to his person or by putting him in such fear as unwilling to part with the property.
Roger Terry was an employee of Trailways Bus Station in Huntsville. On October 6, 1979, the defendant came to the ticket counter in the bus station, where Terry was working, and inquired about the arrival of a bus from Chattanooga as he had done several times earlier that day. Terry was answering the defendant's questions when he heard a "shuffle in the back" and turned around. He was confronted by a man with a shotgun demanding "Give me your money." Terry thought it was a joke and argued with the robber. The man with the shotgun said, "We want your money, don't we?" and the defendant said, "Yes, he's not kidding, give him your money." *Page 943 
When the man with the shotgun pumped it, Terry "tore off" and ran into the manager's office where the manager called the police. When Terry came out both the man with the shotgun and the defendant were gone. The only thing missing from the bus station was a bank bag.
A man was seen running near the bus station carrying a white bag and a shotgun. He got in a white over green Ford which was occupied by two other men and the car sped away from the scene of the crime. When Huntsville Police Officer Joe K. Hastings stopped the Ford within a short time after the robbery and within a short distance from the bus station, the Ford was occupied by Leonard Parker only. Mr. Terry identified Parker as the man with the shotgun. A shotgun and a money bag lay on the back floorboard of the car.
Parker, who was not immediately arrested, was taken in for questioning and told the police that he did not commit the robbery and that he had let the defendant borrow his car. Subsequently, Parker and one Lee Andrew Jackson pled guilty to the robbery.
Mrs. Velma Hughes knew the defendant, Parker and Lee. Her house was approximately one block from the bus station. Her testimony reveals that shortly before the robbery these three men were together in the green and white Ford. Later that afternoon the three men returned to her apartment. This time the defendant had a shotgun. In response to her questions one of the men said "something about they had robbed Trailway." Mrs. Hughes then put all three men out of her apartment.
Parker and Lee left in the Ford and the defendant, without the shotgun, went around the back of the house. Mrs. Hughes saw the police apprehend Parker in the Ford.
This evidence presented a jury question of the defendant's guilt and the motion to exclude the State's evidence was therefore properly denied. The jury could infer from the evidence that the defendant was a willing and active participant in the robbery and, hence, it is immaterial that he was not the leader of the group, Bascom v. State, 344 So.2d 218
(Ala.Cr.App. 1977), or that he did not personally take the property. Lee v. State, 346 So.2d 31 (Ala.Cr.App. 1977).
The evidence showing that Terry "tore off" and ran into the manager's office after one robber pumped the shotgun constituted substantial evidence of Terry's fear generated by the action of the robbers. Golston v. State, 57 Ala. App. 623,330 So.2d 446 (1975).
The fact that no one saw either of the robbers actually take the money does not entitle the defendant to an acquittal.Gibson v. State, 347 So.2d 576 (Ala.Cr.App. 1976). The victim need not be physically and actually present when the property is taken. It is sufficient if the property is taken from his presence or personal protection within the technical and legal meaning of those terms. DeFranze v. State, 46 Ala. App. 283,285, 241 So.2d 125 (1970). See also Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962). "A thing is in the presence of a person with respect to robbery, which is so within his reach, inspection, observation, or control that he could, if not overcome by violence or prevented by fear, retain his possession of it." 77 C.J.S. Robbery, Section 9 (1952).
With regard to the issue of the ownership of property the record shows:
 "Q. What, if anything, was missing from the bus station?
"A. The only thing I show missing was a bank bag."
* * * * * *
 "Q. And is this the bag that was removed from the Trailways bus station on the 6th day of October, 1979.
"A. Yes, sir."
Terry described the bag as a red cloth type, zip-up bank bag with Henderson National Bank on one side. The indictment charged that the bank bag was the personal property of Trailways, Inc.
The element of robbery may be proven by facts and circumstances as well as by direct *Page 944 
and positive evidence. Garrison v. State, 372 So.2d 55
(Ala.Cr.App. 1979). Here there was just barely enough evidence from which the jury could reasonably infer that the stolen property was in the possession and control of Trailways, Inc. Additionally, we note that the defendant moved to exclude the State's evidence on the grounds that the State "failed to prove either force or fear on the part of anyone much less Robert Earl Oliver." On this ground the defendant argued that a prima facie case of robbery had not been established. No additional grounds were assigned. There was no motion for a new trial. The motion was not sufficiently specific to permit review with regard to the issue now raised. Mitchell v. State, 50 Ala. App. 121, 277 So.2d 395, cert. denied, 291 Ala. 794, 277 So.2d 404
(1973).
In conclusion we find that the question of the guilt or innocence of the defendant was properly submitted to the jury and that the evidence was sufficient to support their verdict.Dolvin v. State, 391 So.2d 133 (Ala. 1980).
 II
We find that the chain of custody of the bank bag was sufficiently established to allow its introduction. The evidence established a "reasonable certainty that there has been no substitution, alteration, or tampering" with the bag.Lynn v. State, 380 So.2d 366, 367 (Ala.Cr.App. 1980), and cases cited therein.
 III
The evidence presented by the defendant at trial tended to prove alibi. The defendant did not testify. After the defense rested, the State, on rebuttal, introduced a confession given by the defendant to the police after his arrest.
Madison County Sheriff's Investigator Al Duffey interviewed the defendant in the county jail on the 28th of November, 1979. Duffey testified that the defendant "sent down for us to come up and talk to him." Duffey did not warn the defendant of his "Miranda" rights; he "had no reason to" because he did not know what the defendant was going to talk about.
At the conclusion of this conversation, Duffey asked the defendant if he would "mind giving me a statement of the facts he was talking about." The defendant agreed and Duffey told him he would return the next day.
On the 29th, Duffey returned and advised the defendant of hisMiranda rights. The defendant then wrote his own statement on paper which had a printed waiver of rights on it. After finishing, the defendant signed the statement.
The defendant contended and testified that his statement was not true and that he gave it to "get" Leonard Parker put in jail. The defendant stated that he gave the statement because "he wanted Leonard Parker in jail because he was not going to do the time with Leonard Parker walking the streets laughing at him." The defendant further testified that on the 28th Duffey told him that the statement would not be used against him. Duffey denied this and stated that to the best of his knowledge he did not make any such promise to the defendant.
 "A. I don't remember making that statement. It's possible. If it's in the tape, I did.
"Q. Do you still have that tape?
"A. Yes, sir.
 "Q. Could you have told him that without it being on the tape?
 "A. No, sir, not to my knowledge. I don't think I would have told him that. It's possible, but I don't think I did."
County Jail Assistant Correctional Officer Billy Bass was present on both occasions the defendant gave statements to Investigator Duffey. The defense called Bass in rebuttal to the evidence the State presented in its rebuttal. Bass testified that he did not tell the defendant that the statement would not be used against him and that he did not remember Duffey making such a statement.
At this point, defense counsel made the following statement: *Page 945 
 "Your Honor, at this time I feel we are entitled to listen to the tape of that conversation that was taken the day before (November 29th). . . ."
The trial judge overruled this request.
The trial judge admitted only the written statement which was given on November 29th, ruling that "anything prior to those(Miranda) warnings would not be admissible." The tape recorded conversations of the 28th was suppressed and never heard by the court or the jury.
After considering the particular facts and circumstances of this case, we find that the trial judge did not abuse his discretion in determining the voluntariness and admissibility of the written statement of the defendant and in overruling the defendant's request for the tape recording of the conversation held on November 28th.
We particularly note that only after the State began laying a predicate for the admission of the defendant's written statement, did defense counsel request a ruling on his pretrial motion to suppress the confession and produce the taped conversation of November 28, 1979. Contained in that motion is the essence of the defendant's assignment of error.
 "4. That on November 28, 1979, the defendant did freely give the confession heretofore mentioned upon the promise that it would not be used against him, that it would not be turned over to the office of the District Attorney, and it would be used only to provide a means of arrest for those persons who actually committed the act.
 "5. That the Office of the District Attorney has turned over to the attorney for the defendant a copy of what purports to be a transcription of the taped interview of the confession of the defendant of November 28, 1979.
 "6. That said transcription appears to be an incomplete transcription of said tape in that the copy begins with an answer by the defendant with no question preceding. Defendant also contends that said promises heretofore mentioned were recorded on this tape at the same time."
At trial the defendant objected to the admission of the written statement of November 29th "due to the fact that theMiranda warnings were not properly read and waived."
Officer Duffey testified that the defendant did not reply to his question "Do you understand each of the rights just stated to you?" Duffey stated that the defendant did say that he understood in response to the question, "Do you understand that we are not threatening you nor promising you anything in order to secure a statement from you?" The defendant also said, "Yes, sir" to the question, "With those rights in mind, do you wish to talk to us?" At the end of his written statement the defendant wrote, "I make this statement on my own. I'm not asking the State for anything and no one has offered me anything. I asked to see and talk with them on my own."
Although the evidence is conflicting as to whether or not the defendant was told that his statement would not be used against him, this was an issue which the trial judge had to determine. When such a conflict occurs, great weight must be given his judgment. His finding will not be disturbed on appeal unless the appellate court is convinced that the conclusion is palpably contrary to the weight of the evidence. Even where there is credible testimony to the contrary, if the evidence is fairly capable of supporting the inference that the rules of freedom and voluntariness were observed, the ruling of the trial judge need only be supported by substantial evidence and not to a moral certainty. Thompson v. State, 347 So.2d 1371,1375 (Ala.Cr.App.), cert. denied, 347 So.2d 1377 (Ala. 1977).
The fact that the defendant's statement was motivated by his feelings of revenge and induced by his desire to see another prosecuted for the robbery does not render that statement involuntary.
 "(T)he term `voluntary' means that the confession must be the product of the defendant's own judgment and the operation of his own mind, uninfluenced by methods and devices which are denounced *Page 946 
by law or by any extraneous disturbing cause which deprives him of his free will and volition. Correlatively, an improper inducement which will exclude a confession must be external — that is, the motive of hope or fear must be directly applied by a third person, and must not arise merely from the operations of the accused's mind."
29 Am.Jur.2d, Evidence, Section 542 (1967).
See also Eakes v. State, 387 So.2d 855, 860 (Ala.Cr.App. 1978).
We also find that the trial judge did not abuse his discretion in denying the defendant's request for the tape recorded statement of November 28th. Only the written statement of November 29th was admitted into evidence before the jury. Granted, the defendant had a right to introduce evidence that this statement was obtained by improper inducements. C. Gamble,McElroy's Alabama Evidence, Section 200.02 (8) (3rd ed. 1977). However, here, both law enforcement officers who were present when the defendant gave his statements denied or stated that they did not remember offering the defendant any promises that his statement would not be used against him. Under these circumstances, it was within the discretion of the trial judge to order the State to produce a tape recording which might or might not have impeached the testimony of these two officers, one of whom was called as a witness by the defendant. It matters not that we might not have made the same decision as did the trial judge. The question on review is whether he abused his discretion. Finding no abuse, we must affirm his decision.
No objection was made at trial and none is raised on appeal that the lack of a proper Miranda warning before the first in-custody statement necessarily rendered inadmissible the later statement made after a proper warning. See McElroy, Section 201.08. We are not faced with this issue on appeal since specific grounds of objection waive all grounds not specified. Waters v. State, 360 So.2d 358, 363 (Ala.Cr.App.), cert. denied, 360 So.2d 367 (Ala. 1978).
We have searched the record and, finding no error prejudicial to the substantial rights of the defendant, affirm the judgment of the Circuit Court.
AFFIRMED.
All Judges concur.