HARRIS, Presiding Judge.
Appellant was indicted by the September, 1976, session of the grand jury of Jefferson County, Alabama, on three counts: (1) burglary in the second degree, (2) grand larceny, and (3) buying, receiving, concealing, or aiding in concealing stolen property. Subsequently, appellant in the presence of counsel was duly arraigned, entering a plea of not guilty to the charges against him. A *1045 jury tried and convicted appellant for burglary in the second degree and he was sentenced to five years imprisonment in the penitentiary. Having been found indigent, appellant is in this court with appointed counsel and a free transcript.
This case arose from a burglary at the home of John F. Angwin, Sr., on 2617 Dolly Ridge Road in Birmingham, Alabama. Mr. Angwin testified that, on July 1, 1976, he and his family left their home for approximately one and one-half hour. Before leaving the residence, entrances to the home were secured. However, upon returning home, Mr. Angwin discovered that a sliding glass door and a chain lock had been broken. A search of the premises revealed that numerous items were missing, including sixteen rifles and shotguns, jewelry, coin collections, and a television set, aggre-gately valued at over six thousand dollars. The recovered guns were identified by Mr. Angwin by matching serial numbers of which he had kept a record.
Thomas H. Swatek testified that he was employed by the Jefferson County Sheriff’s Department as a sergeant of detectives. On July 1,1976, Swatek investigated a burglary at the residence of Mr. Angwin. At some later time, on the twelfth or thirteenth day of July, Swatek had a conversation with Sergeant Richard Watkins of the Mountain Brook Police Department at Mountain Brook City Hall. Appellant was also present and Swatek interviewed him.
On voir dire examination, Swatek testified that Sergeant Watkins informed appellant of his constitutional rights by reading them to him from a card. Following this, appellant made a statement. It was shown that no one threatened or coerced him and no reward or hope of reward was promised him to get him to make a statement.
From the record:
“Q. What did he say to you?
“A. I ask him about the Angwin burglary in particular, since that was the one I was working on, and I made reference to the Buffalo Bill Winchester rifles that Mr. Angwin had stolen and he stated that he had gone in the house with Jones and Cook and I believe that Israel said he was supposed to get jewelry, one was supposed to get guns and one was supposed to get TVs.
“Q. Did he say anything else about going into that Angwin residence and taking property out of it?
“A. Nothing other than they got a lot of guns.”
On cross-examination during voir dire, Swatek testified that appellant rode with him and Watkins and pointed out the Ang-win residence at the scene of the burglary. While appellant was making the statement at City Hall, appellant’s father was present and told him that “you and those other so-and-sos better get that stuff and tell these people what you did with it and go and show them the places.” Swatek further testified that he told appellant, who pointed out other homes that had been burglarized, that he would not be charged in those cases. Appellant was under investigation on the Angwin burglary because one of appellant’s cohorts informed Watkins that appellant was “with them on it.” Swatek further testified that he told appellant, following Miranda warnings, that he knew appellant was involved in the Angwin burglary because he had been told so by someone. During the ride appellant pointed out the Angwin home and told the officers this was the house where they got the guns.
Appellant then objected to the admission of the statement into evidence. From the record:
“MR. PICKARD: I move to exclude the statement.
“THE COURT: Overruled.
“MR. PICKARD: On the grounds it is not voluntary and this defendant had been threatened with prosecution in a case wherein the police had no legal evidence to sustain the issuance of a warrant and it constituted a veiled threat on their part to induce this person to make a statement and, in effect, was telling him he might as well do it, that they had the evidence, which they didn’t.
*1046 “THE COURT: Overruled.”
Back in the presence of the jury, Swatek testified to appellant’s admission over appellant’s objection. Swatek further testified that appellant told him some of the stolen property was at the home of Joe Dallas in West End and some was at a place on Southside. Later that same day, Swatek obtained a search warrant for Joe Dallas’s home and, upon executing the warrant, the officers found three of the weapons taken from the Angwin residence. These items were later turned over to Mr. Angwin’s son at the Mountain Brook Police Department.
Swatek’s testimony conclude the State’s case. The defense produced no evidence.
After his conviction, appellant filed the following motion for new trial, which was denied.
“MOTION FOR A NEW TRIAL
“TO THE HONORABLE WILLIAM COLE, JUDGE OF THE TENTH JUDICIAL CIRCUIT OF JEFFERSON COUNTY, ALABAMA, CRIMINAL DIVISION.
“Comes now the defendant James J. Israel, Jr., by and through his attorney of Record, Fred Pickard, and moves the court to set aside the verdict of the jury and the judgment of the court imposed in the above entitled cause and to dismiss the case against the said Defendant, and for grounds of said motion, sets down and assigns the following separately and severally:
“1. The verdict of the jury was contrary to the law and the evidence.
“2. The verdict of the jury is not sustained by the great preponderance of evidence.
“3. Newly discovered evidence has been produced which would greatly tend to exonerate the defendant, to-wit: During the course of the trial an alleged confession was testified to by Sgt. Tom Swatek of the Jefferson County Sheriff’s Department. In substance, Sgt. Swatek told the jury that James J. Israel was taken into custody at the Mtn. Brook Police Department on July 13,1976, in connection with a burglary which occurred at the home of a John F. Angwin, Sr., on July 1, 1976. Sgt. Swatek stated that on that same date of July 13, 1976, James J. Israel, Jr. admitted to him that he took part in the burglary and that a number of guns taken in the burglary were carried to the home of a man named Joe Dallas. In substance, Sgt. Swatek further testified that based on that information, he obtained a search warrant for the home of Joe Dallas and recovered the guns in question from that house on July 13, 1976.
“After the trial, a phone call was made to the Mtn. Brook Police Department by the attorney for your Petitioner and he was advised by Mrs. Robin Shaling that according to the Police Records at Mtn. Brook, James J. Israel, Jr. was taken into custody at Mtn. Brook on July 16, 1976. The Petitioner, James J. Israel, Jr., advised his attorney that he believed the date of July 16, 1976, to be correct because he remembered reading a newspaper article about the search of Dallas’s house days prior to his ever being interrogated. A further check was made of the District Attorney’s file and it was learned that a warrant for James J. Israel, Jr. was not issued until July 20, 1976. The District Attorney’s file on Joe Dallas also verified that the search of his house was made on July 13, 1976.
“The State’s case was based entirely on the confession, testimony of Sgt. Swatek and the corroborating evidence that the stolen property was recovered as a result of the confession. The confession was not written or signed or tape recorded in any manner, thus magnifying the importance of the recovery of the stolen property to point to the guilt of James J. Israel, Jr. by corroborating the obviously questionable confession.
“Petitioner contends that the newly discovered evidence mentioned heretofore would tend to exonerate him and would greatly alter the nature, quality, and quantity of the evidence produced by the State tending to show his guilt.
*1047 “4. That the petitioner, James J. Israel, Jr., was denied a fair and impartial trial in violation of his constitutional rights, afforded by the State of Alabama and the United States of America in that Sgt. Tom Swatek testified to the jury incorrectly with regard to material evidence during the trial of the State of Alabama vs. James J. Israel, Jr.”
At the hearing on the motion, appellant testified that he recalled Sergeant Swatek’s testimony at his trial and denied ever having made a confession to him and that he ever pointed out the Angwin home to Swa-tek. The following then occurred. From the record:
“THE COURT: I think this testimony is absolutely inadmissible.
“MR. PICKARD: Judge—
“THE COURT: I think it has nothing to do with this situation, and I will tell you why it irritates me:
“He didn’t take the stand in front of—
“MR. PICKARD: That’s right, he didn’t because of that rebuttal evidence.
“That has a bearing—
“THE COURT: Because he has a record a mile long. That’s why he didn’t take the stand.
“MR. PICKARD: Maybe that, but that also had some bearing on it.
“THE COURT: And, then, he stands up here and disputes what the officer said on a motion for a new trial.
“I think it’s inadmissible.
“MR. PICKARD: We were advised that they had rebuttal evidence. I know that they have got rebuttal evidence to show — to back up what they say.
“That goes a great deal in determining whether he takes the stand — I am not saying that he would have, but he does have that weight to it.
“THE COURT: With a record like he has, he wouldn’t take the stand in a million years.
“But I think it is absolutely inadmissible to come up here and testify on a motion for a new trial, put in a motion for a new trial record that which was not before the jury, and he stands up here and disputes the testimony given.
“I have never — I have never, in my many years, heard such a thing on a motion for a new trial, that kind of testimony.
“MR. PICKARD: Well, we are not asking the Court to believe it, or not, but we would have had that opportunity, whether we chose to take it, or not, for him to tell the jury that.
“In part, one of the reasons we didn’t was because of their testimony.
“I am not saying—
“THE COURT: Oh, I want to hear it, what he has got to say about Dallas’s gun, and what he has got to say about when he was arrested.
“What he would have said had he testified before the jury this week, I don’t want to hear about it.”
On cross-examination appellant was thoroughly impeached when he admitted that he had many previous felony convictions. Appellant further testified that he remembered having gone to trial on the charge against him before when the case ended in a mistrial. During the present trial, appellant claimed that he told his counsel about three quarters through the trial that he had not confessed to the crime and that he was arrested over a week after the Dallas residence had been searched and the property recovered.
Counsel then entered into the following stipulation. From the record:
“THE COURT: Now, something should be said for the record about the agreement, if there be an agreement, with reference to the fact that—
“MR. PICKARD: Yes, sir.
(Reporter’s Note: Drowning out the next word of the Court)
“THE COURT: —about the facts set forth in this motion for a new trial.
“MR. PICKARD: Yes, sir. I would like to say, for the record, that the District Attorney, Mr. Burton Dunn, has agreed to stipulate that, in substance, the facts, as they were set out — I am talking about the facts in the case in the motion for a new trial — are true and accurate, and I *1048 am not speaking of any argument in support of those facts that I might put in there.
“MR. DUNN: I do stipulate as to the facts stated in the motion for a new trial as being true and correct.
“However, my contention is that the facts alleged in the motion do not warrant, or merit, a granting of the motion for a new trial.
“THE COURT: Now, let me see if I get the picture, and I will try to state it succinctly for the record:
“During the trial, the deputy sheriff testified that he had interviewed the defendant at the time of his arrest, on the 13th day of July, that the defendant indicated where the guns were, mainly, at Dallas’s.
“And, on the same day, July 13th, he went out with a search warrant, and got one, or more, guns from the place called
‘Dallas’, who was a fence.
“That is what the testimony was.
“And, in truth and in fact, you two have agreed that the correct stage and the correct procedure was that on the 13th of July a search warrant of the Dallas house revealed two, or more, guns taken from Angwin.
“That was before the defendant was arrested, before he was in custody. I guess that’s all I have to say.
“But, on the 16th, he was then arrested and was interviewed, I gather, and he did — well, I don’t know whether you want to add that part.
“There seems to be some dispute as to whether he — ‘he’ meaning the defendant — named the Dallas house. Of course, the defendant said that he didn’t. I don’t know.”
Further:
“THE COURT: Well, but did the man still make the confession on the 16th, as he did on the 13th?
“I gather that the mistake is only in dates.
“MR. DUNN: Yes, sir.
“THE COURT: Not what the testimony was.
“I am not, on those dates — in other words, the only mistake you all said—
“MR. PICKARD: Well, Your Honor, if there is a mistake in the dates, then there is no testimony to support the conclusion that he made the confession on the 16th.
“It’s — the first testimony of Sergeant Swatek was incorrect.
“THE COURT: You mean, as to the date, or to the whole thing?
“MR. PICKARD: Well, he said that he testified on the 13th — confessed on the 13th, when, in fact, he did not, and there is no evidence before the Court that he did confess on the 16th.
“It’s a conclusion that will be drawn by the Court if you draw that inference from the testimony.
“MR. DUNN: We will call Sergeant Swatek, then.”
Sergeant Swatek then testified that he was mistaken as to the dates of the search at the Dallas house and of appellant’s confession. The search was conducted on the 13th of July, while appellant was not arrested until the 16th. However, the guns taken at the home of Joe Dallas match the description of weapons given by appellant in his subsequent statement. In fact that information in the affidavit for the search warrant of Dallas’s home came from Charlie Jones, who originally implicated appellant in the Angwin burglary.
In rebuttal, appellant testified he never took Swatek to the Angwin home and never told Swatek that the guns were at the home of Joe Dallas. Appellant did point out other homes that had been burglarized to Swa-tek. Appellant denied committing any burglaries.
Excerpts of Swatek’s testimony during appellant’s case ending in a mistrial were admitted into evidence. That transcript shows that appellant did confess to complicity in the Angwin burglary on July 19,1976. The testimony is summarized in the trial judge’s order denying the motion for new trial. That order is set out below:
“This the 15th day of February, 1978, defendant files Motion for New Trial, and same is hereby set for hearing February 17th, 1978.
*1049 “This the 21st day of February, 1978, the Motion for New Trial heretofore filed in this ease and the facts in this case was first tried before Judge Gibson on March 10, 1977 and a mistrial was declared by failure of jury to agree. The attorney representing defendant in instant trial represented him in the mistrial. Mrs. Jean Moreland was the court reporter and she has reported to this Court excerpts of testimony given by witness Swatek in March 1977 trial. He testified in substance defendant was arrested July 16, 1976 and questioned Monday, July 19, 1976; that defendant told him that he, the defendant, took guns to the house of a ‘fence’ later identified as Dallas and that Swatek had recovered the guns before defendant’s arrest. Jones, who was apparently involved with defendant, was arrested July 10, 1976 in Mountain Brook according to police department records. Should defendant’s attorney wish to have this testimony written up and it is contrary to this Court’s impression of the testimony, this Court will reconsider the order below if done within ten (10) days. “Defendant and his attorney knew or were exposed to the testimony given in March, 1977. Defendant knew the facts now characterized as newly discovered evidence as early as March, 1977. The witness Swatek apparently made a mistake twice as to the date of questioning. This Court does not consider this a case of newly discovered evidence. But if by some stretch it is so considered, it is this Court’s considered judgment: that it will not change the result if tried again; it was not discovered since the trial; it could have and should have been discovered 10 months before this trial by defendant and his attorneys in the exercise of due diligence and at best the so-called new evidence is merely impeaching and discrediting.
“The said Motion being duly considered by the Court, it is ordered, adjudged and decreed that Motion be and the same is hereby overruled and denied.”
To further confirm the trial judge’s finding that the allegedly “newly discovered evidence” was available to appellant at the time of trial, one must look only to appellant’s statement at time sentence was imposed. From the record:
“THE COURT: You have heard the verdict and in accordance with the-verdict, the Court adjudges you guilty. Do you have anything to say why sentence should not be pronounced upon you?
“DEFENDANT: Yes, sir. Because I’m not guilty of this crime.
“THE COURT: Do you understand that as far as this Court is concerned, that has already been solved by this jury?
“DEFENDANT: Yes, sir. But if I may speak, all the people that were arrested and the merchandise that was recovered was recovered before I was ever arrested. This guy Joe Dallas that they busted his house and confiscated all of the weapons, I read that in the paper. I was free. I wasn’t out on bond or anything.”
The trial judge properly overruled appellant’s motion for new trial. In Zuck v. State, 57 Ala.App. 15, 325 So.2d 531, cert. denied 295 Ala. 430, 325 So.2d 539, we find the following language:
“The general principles applicable to a motion for a new trial on the claim of newly discovered evidence are found in Hodge v. State, 32 Ala.App. 283, 26 So.2d 274. Specifically, the court stated that such a motion must be predicated on the following requirements:
“ ‘. . . (1) that the evidence is such as will probably change the result if a new trial is granted; (2) that it has been discovered since the trial; (3) that it could not have been discovered before the trial by the exercise of due diligence; (4) that it is material to the issue; (5) that it is not merely cumulative or impeaching.’ ”
From the evidence detailed above, it is clear that the evidence on the hearing was not only available and discoverable through due diligence, but was actually known to appellant at the time of the trial. Nor would its admission in a new trial change -the result of the outcome of the *1050 ease. Swatek’s testimony still remains that appellant did confess to his participation in the Angwin burglary; only that confession was made on July 19, 1976, not July 13, 1976. Furthermore, appellant’s testimony upon the hearing on motion for new trial was only in the nature of impeachment of Swatek’s testimony at trial.
Appellant further contends that the confession testified to by Swatek was the product of a promise that appellant would not be prosecuted in exchange for his cooperation on other burglary cases. This deserves no discussion other than to point out that Swatek informed appellant that he would not be prosecuted on other cases in which he supplied information. Since this statement occurred at a time and place separate and subsequent to appellant’s confession to his involvement in the Angwin burglary, it could not be considered a collateral benefit, a test of voluntariness which was impliedly disapproved in O’Tinger v. State, Ala.Cr.App., 342 So.2d 1343, and expressly held erroneous by the Alabama Supreme Court in Ex Parte: Alfred Holt, Ala., M.S. October term 1977-78 (reversing this Court’s opinion affirming the rule). Thus, no error resulted in the trial court’s ruling the statement admissible, the weight and credibility of it within the province of the jury. Jones v. State, 292 Ala. 126, 290 So.2d 165 (cited by the majority in Holt, supra).
The evidence to support appellant’s conviction for burglary in the second degree is sufficient. The State’s evidence at trial was uncontradicted that Mr. Angwin’s home was broken into on July 1, 1976, while he and his family were away. The intruders made away with approximately six thousand dollars in property. To this appellant confessed his involvement.
A careful search of the record reflects no error injuriously affecting the substantial rights of the appellant. The judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.