Floyd Chatman was indicted, tried, and convicted for robbery. The trial court set sentence at twenty years imprisonment, and this appeal followed. *Page 352 
On August 18, 1978, at approximately 6:00 p.m., Robert Cato was preparing to close the Texaco service station which he managed, located on the Birmingham Highway in Montgomery County, Alabama. While Mr. Cato was serving one of his last customers, a black male, later identified as Charles Chatman, approached Mr. Cato and asked for and received change for a soft drink machine. Shortly thereafter, Charles Chatman and an individual, positively identified in court by Mr. Cato as the appellant, entered the service station. According to Mr. Cato, the appellant was carrying a sawed-off shotgun and told him, "This thing will cut you in two, man" (R. p. 38). While his companion rifled the station's cash register, the appellant forced Mr. Cato into the station bay area where he held the shotgun against Mr. Cato's body and removed a billfold and money from Mr. Cato's pockets. Thereafter, the appellant and his companion fled into a wooded area adjacent to the station. Mr. Cato testified that he was subsequently unable to positively identify appellant from mug shots shown to him by the police and that he was also unable to positively identify appellant at two lineups conducted at police headquarters. At appellant's preliminary hearing, and again at trial, however, Mr. Cato positively identified appellant as one of the participants in the robbery of his Texaco service station and his person.
Detective V.H. Hicks of the Montgomery Police Department testified that he participated in the investigation of the robbery of Cato's Texaco service station. Detective Hicks related that on the day of the robbery he searched a wooded area near the service station and found a loaded twenty-gauge shotgun.
Detective William R. Wilson of the Montgomery Police Department testified that pursuant to an anonymous telephone tip on the day of the robbery he and other detectives visited an address on Philip Street where the appellant, among others, was present and was questioned. Appellant, however, was not arrested until August 23, 1978.
Detective Wilson stated that after appellant was transported to the police station he was advised of his constitutional rights from a "standard Miranda rights form," and appellant signed this form. Detective Wilson stated that the appellant did not ask for a lawyer or indicate in any way that he did not want to talk with the police at this time.
Appellant was placed in a lineup at approximately 9:45 a.m. on the day of his arrest. After the lineup, the appellant was again advised of his constitutional rights a second time and was further informed that he had been tentatively identified from this lineup. At this time appellant gave an oral confession to police officers, but refused to make a written statement.
Detective Wilson denied that the appellant had been physically abused, threatened, coerced, or promised lenient treatment, or otherwise induced into giving a statement.
On cross-examination, Detective Wilson admitted that the appellant was told that, if he would help the officers solve other robberies, they would do everything they could to help him with the robbery charge which was then pending.
 "I stated to him very clearly that I was not promising him any probation or anything like that because it was not in my power to do it, but I would talk to the judge or a D.A., or whoever it was feasible to help him if he could turn some more robberies for us."
(R. p. 81)
On redirect examination, Detective Wilson stated that all of the discussions with the appellant about mutual cooperation took place after appellant had confessed (R. p. 83).
Testimony from other police officers corroborated the testimony of Detective Wilson.
The appellant's sister and grandmother testified that, as far as they knew, the appellant had never been in trouble before and that his reputation in the community for telling the truth was good. *Page 353 
The appellant testified in his own behalf that he was eighteen years old and had moved to Alabama from New York earlier that year. He recounted that he was visiting a relative, Brenda Steele, on the day of the robbery. The police made two visits to the Steele residence that day, but made no arrests.
Six days later, however, the appellant was arrested and taken to the police station. According to the appellant, at the station he was physically abused and forcibly compelled to participate in a lineup. He claimed he requested the opportunity to see a lawyer, but was refused. The appellant maintained that, despite the efforts of the police, he refused to make a confession or incriminate himself in the robbery of the Texaco service station in question.
Several of the police officers who testified previously maintained on rebuttal that the appellant was not physically abused in any manner.
 I
Appellant first contends on appeal that the trial court erred in refusing to allow Bertha Allen to testify as an alibi witness for the defense at trial. It appears from the record that the rule was invoked to exclude witnesses from the courtroom during trial.
Bertha Allen, however, apparently was not properly sequestered with the other witness and, consequently, was present during part or all of the proceedings. When defense counsel attempted to call her in order to bolster appellant's alibi defense, the trial court refused to let her testify (R. pp. 176-179).
The general rule in Alabama is that the invocation and enforcement of the rule of exclusion of witnesses is a matter within the sound discretion of the trial court and is not normally subject to appellate review. Stone v. State,55 Ala. App. 663, 318 So.2d 359 (1975); Patterson v. State,53 Ala. App. 567, 302 So.2d 540, cert. denied, 293 Ala. 770,302 So.2d 545 (1974); Gamble, McElroy's Alabama Evidence, § 286.01 (3d ed. 1977).
 "The better practice, however, seems to be to permit the witness to testify and punish for the violation of the rule. We are of the opinion that where the rule is invoked as to witnesses, and is violated by a witness without any fault on the part of the defendant, the court has not the right under the law to deprive the defendant of the testimony of such witness. We think the right is one guaranteed to the defendant by the Constitution, and of which he may not be deprived without fault on his part." (Emphasis in original)
Mitchell v. State, 28 Ala. App. 119, 122, 180 So. 119, 123, cert. denied, 235 Ala. 530, 180 So. 123 (1938), quoting fromDegg v. State, 150 Ala. 3, 43 So. 484 (1907).
Because appellate judges cannot observe the demeanor of the parties at trial nor hear the inflection of their voices, the determination of whether the defendant was at fault rests in the discretion of the trial court, and is not subject to appellate review in the absence of clear abuse. Johnson v.State, 8 Ala. App. 14, 62 So. 450, rev'd on other grounds,183 Ala. 88, 63 So. 73 (1913).
In the present case, the record is unclear with reference to whether Bertha Allen was ever subpoenaed to serve as a witness. The following exchange, however, indicates that defense counsel knew the witness yet failed in his duty to apprise the court of her presence in the courtroom. From the record:
 "MR. MEMORY: Judge, there is a witness that is in the courtroom that has not been sequestered that we would like to call in light of cross-examination by the prosecutor.
"THE COURT: Is this a surprise?
"MR. MEMORY: No, I —
"THE COURT: Why haven't —
 "MR. MEMORY: It just involves him being at the address of Philip Street.
 "THE COURT: Then it's not a surprise and the witness has been in the courtroom the whole time.
 "MR. MEMORY: Well, I apologize. It has just come to my attention that she is in the courtroom. *Page 354 
"THE COURT: Has she been subpoenaed?
"MR. MEMORY: To the best of my knowledge she has.
 "THE COURT: How long have you known about this witness, since August?
 "MR. MEMORY: Well you see, I am familiar with most of the faces but she's the only one that was at this address that is here today.
 "THE COURT: Was she in court this morning when she was due to be here? Which one is she? Where were you this morning?
 "A WITNESS: Well, Judge, I wasn't here. I have a nine to eleven o'clock class —
 "THE COURT: But you also had a subpoena to come to Court, didn't you? Or did you?
"A WITNESS: No, I didn't.
"THE COURT: Motion denied."
(R. pp. 175-176)
We hold that the trial court did not abuse its discretion in refusing to permit the proposed witness to testify. Jeter v.State, Ala.Cr.App., 376 So.2d 808 (1979).
 "To hold otherwise would unduly impair the authority of the court to enforce a regulation having for one of its objects the guarding of witnesses against improper influences or suggestions to which they might be subjected if they were permitted to remain in the courtroom during the progress of the trial." Johnson v. State, supra, 8 Ala. App. at 19-20, 62 So. at 453.
 II
Appellant lastly contends that the trial court erred in allowing testimony regarding his alleged oral confession because "a strong inference exists that significant inducements and promises were offered in order to persuade the defendant to enter his confession" (Brief of Appellant, page 13).
We first note that the evidence regarding the voluntariness of appellant's oral confession is conflicting. Thus, great weight must be given to the judgment of the trial court on this issue. Jordan v. State, Ala.Cr.App., 380 So.2d 999 (1979);Twymon v. State, Ala.Cr.App., 358 So.2d 1072 (1978).
Detectives Wilson and Alford both testified that any discussion with appellant regarding possible lenient treatment occurred after his oral confession. Moreover, appellant had been advised of his rights on at least two occasions prior tomaking the statement.
Since any discussion of possible lenient treatment of appellant occurred after appellant's confession, no inducement to confess was present. Therefore, we determine that the trial court was correct in admitting this confession. Israel v.State, Ala.Cr.App., 363 So.2d 1044 (1978).
There being no error shown by the record in this case, this case is due to be and is hereby
AFFIRMED.
All the Judges concur.