502 So.2d 858 (1986)
Larry Edward JACKSON
v.
STATE.
1 Div. 959.
Court of Criminal Appeals of Alabama.
December 9, 1986.
On Return to Remand February 10, 1987.
*859 Jeffery C. Duffy of Duffy & Wallace, Montgomery, for appellant.
Charles A. Graddick, Atty. Gen., and Mary Ellen Fike Forehand, Asst. Atty. Gen., for appellee.
McMILLAN, Judge.
Larry Edward Jackson was convicted of murder and sentenced to life without parole, pursuant to the Alabama Habitual Felony Offender Act.
Elizabeth Taylor, daughter-in-law of the victim, James Taylor, testified she saw her father-in-law at his home two days before he was murdered. Shirley Speights, James Taylor's daughter, indicated that on the day in question, she went to her father's home. She noticed that the glass in the top part of the door was broken out. The next afternoon, she returned to her father's home and, after calling him and finding no one around the house, she went to the home of one of his neighbors. The neighbors indicated that they had not seen him *860 in about three days. According to Ms. Speights, James Taylor usually carried a large amount of cash in his pants pockets and often lent money to the black people in the area. Herman Howard, the deceased's grandson, testified that on the same day that Shirley Speights had returned to her father's home, he went to his grandfather's house. He also saw broken glass in his grandfather's door over the door knob. He stated that he twisted the door open, went inside and saw his grandfather's walking cane on the table.
Jackson Police Chief Bill Taylor testified that on the same day he was called to James Taylor's home on a missing person report. He conducted an investigation around the victim's home and found evidence of a struggle in the front part of the house. Thereafter, the victim's body was found during the course of a search of a wooded area. Chief Taylor testified that the victim's forehead was severely lacerated and that two shirts were found over the body. The morning after the body was discovered, while further investigation of the area continued, Chief Taylor and Sheriff Sheffield saw the appellant running in the woods. Chief Taylor yelled for appellant to halt and both of them unsuccessfully pursued him. A blanket and a bedspread found in the area were taken to appellant's home, where his mother identified them as belonging to her and her husband. Various hair samples, bloodstains, and a handkerchief were submitted to the forensic lab for analysis. According to Chief Taylor, a stick of stove wood that appeared to have blood stains and hair on it was found a short distance from the victim's home.
During a search the next day, a shovel was found in a creekbed approximately 51 feet north of where the victim's body was found buried. Several days later a pair of pants was found in the vicinity. Walter Taylor, the victim's son, identified the two shirts found at the scene, as well as the pair of pants and shovel, as belonging to his father. Walter Taylor testified that, before the victim's body was found, the appellant's father described to him the condition of the body and stated that his son had committed the offense. Walter Taylor also testified that on one occasion appellant had tried to rob James Taylor.
James Small, a criminalist with the Department of Forensic Sciences, testified that hair samples taken from the right side of the front door, the right front of the house, the shovel, and a piece of wood, all matched the hair of the deceased, James Taylor. Dr. LeRoy Riddick, a pathologist with the Department of Forensic Sciences, testified that he performed an autopsy on the body and that, in his opinion, James Taylor died from a combination of the injuries to his head and strangulation. These injuries were consistent with being hit in the head with the piece of stove wood. Elaine Scott, a forensic serologist with the Department of Forensic Sciences, testified that she typed the deceased's blood as Blood Group O. According to Ms. Scott, Blood Group O was found on the paint samples taken from the door and on the piece of stove wood. Blood stains were also found on the pants and the handkerchief.
Billy Ray Fields testified that he was arrested on a charge pending against him from the State of Arizona and that he was placed in the Jackson City Jail. He testified that he spent part of his incarceration in a cell next to the appellant. The jury was excused and Fields testified that he had two conversations with the appellant. Fields testified that no one had asked him to talk to the appellant about the crime and that he was not aware of James Taylor's death. According to Chief Taylor, no one, to his knowledge, from the Sheriff's Department or the District Attorney's Office, contacted Arizona officials about the pending charges against Fields and asked them to dismiss the charges. No one offered Fields any reward or money, or told him it would be better or worse for him if he discussed the case. Appellant told Fields that he had been to a party where there was drinking and gambling and that he had gone to this man's house to borrow some money; however, the man had refused. *861 Appellant returned to the party, drank some more, and again attempted to borrow some money from the man. Appellant said the old man refused, whereupon he lost his temper, they fought, and appellant hit him in the head with a piece of iron pipe. The next night Fields and appellant again talked and appellant told him that he had hit the man in the head with a stick of stove wood. No one had asked Fields to talk to appellant and no one had promised appellant anything or forced him to talk to Fields. Fields then testified before the jury and again related these two conversations he had had with the appellant. Arthur DuBose, who stated he had known appellant for a long time and who identified him in the courtroom, testified that on the Saturday night before James Taylor's body was found, he played cards with the appellant at his house. According to DuBose, appellant got there around 4:00 p.m., stayed a couple of hours, left, and returned around 8:00 or 8:30 p.m. Appellant continued playing cards and drinking, then left again around 10:00 p.m. He returned around 11:00 or 12:00. He again played cards and drank until the game broke up around 2:30 a.m. Mr. DuBose stated that he lived about a block and a half from the deceased and that the deceased's home was between the appellant's house and DuBose's home.

I.
Appellant argues that the evidence presented by the State was insufficient to sustain his conviction. This court is required to consider the evidence in a light which is most favorable to the State. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 877 (Ala. 1979); Barnes v. State, 429 So.2d 1114 (Ala.Cr.App.1982).
In Saffold v. State, 494 So.2d 164, 167 (Ala.Cr.App.1986), this court stated:
"In deciding whether or not there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Johnson v. State, 378 So.2d 1164 (Ala.Cr.App.), cert. quashed, 378 So.2d 1173 (Ala.1979); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979); Bass v. State, 55 Ala.App. 88, 313 So.2d 208 (1975). This court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. Johnson v. State. Conflicting evidence presents a jury question not subject to review on appeal, provided the State's evidence establishes a prima facie case. Gunn v. State, 387 So.2d 280 (Ala. Cr.App.), cert. denied, 387 So.2d 283 (Ala.1980); McBryar v. State, 368 So.2d 575 (Ala.1979); 7 Ala. Digest, Criminal Law, Key No. 1159.3.
"The action of the trial court in denying a motion for judgment of acquittal and in denying a motion for a new trial on the ground of insufficient evidence must be reviewed by determining whether or not there exists legal evidence before the jury at the time the motions are made, from which the jury by fair inference could find the defendant guilty. Johnson v. State; Thomas v. State, 363 So.2d 1020 (Ala.Cr.App.1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So.2d 199 (Ala.Cr.App.1983); Thomas v. State."
Furthermore, in Giles v. State, 440 So.2d 1237, 1239 (Ala.Cr.App.1983), this court held:
"Where there is evidence from which the jury may by fair inference find the defendant guilty, the trial court should submit the case to the jury to determine the weight it will give the evidence, and this Court should not disturb the verdict."
This Court has also written:
"This Court is required to view the evidence in the light most favorable to the State, Bass v. State, 55 Ala.App. 88, 313 So.2d 208 (1975), and not substitute its *862 judgment for that of the jury. Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979). Where the evidence presented raises questions of fact for the jury, and such evidence, if believed, is sufficient to sustain conviction, the denial of a motion to exclude the State's evidence, the refusal to give the affirmative charge and the overruling of a motion for new trial, does not constitute error. Young v. State, 283 Ala. 676, 220 So.2d 843 (1969)."
Stewart v. State, 405 So.2d 402, 403-04 (Ala.Cr.App.1981).
The testimony in the present case raises inferences of fact for the jury that if accepted were sufficient to sustain appellant's conviction. In light of the appellate standard for review of a claim of insufficient evidence, the appellant's argument must fail.
Furthermore, while the evidence presented was circumstantial and each factor standing alone is insufficient, when taken as a whole, the evidence sufficiently raises questions of fact for the jury. Under § 13A-6-2, "[a] person commits the crime of murder if: (1) With intent to cause the death of another person, he causes the death of that person...." In this case, the State presented the following evidence: that the appellant had the opportunity, as he left the party for some time; that the appellant had a possible motive of robbery, as he needed money; that no money was found on the victim's person although it was his custom to carry large amounts of money; that the appellant displayed a guilty conscience by running from the police when he was observed where the body was found; and that the appellant made incriminating admissions to Billy Ray Fields while in the Jackson City Jail.

II.
The appellant argues that the statement which he allegedly made to Billy Ray Fields should have been excluded from evidence because it was made while he was being illegally detained and because the statement constituted hearsay.
The appellant argues that his statement was involuntary in that he was being illegally detained when the statement was allegedly made. The appellant was arrested on an alias warrant for failure to appear in city court and pay fines for misdemeanors, trespassing, and public intoxication, for which he had previously been convicted and fined $25 on each case plus court costs. During the suppression hearing, Chief Taylor testified that the appellant had informed him that he did not want to make any statements until he talked to his lawyer; the appellant was never questioned further by the officials, nor did he ever request an attorney.
Regardless of any possible illegality in the appellant's imprisonment, his statement was not made to an official; rather it was made during a conversation with a fellow inmate. Thus, it is not the fruit of an illegal arrest in that it does not flow from the arrest.
"[W]hen an accused volunteers a confession to a person who is not a law enforcement official or agent and has no connection whatever with law enforcement authorities, who has no interest whatever in the prosecution of the accused, is not in a position to promise or give the accused anything to compensate for his confession or to harm him for not making a confession, and there was no occasion whatever on the part of the person to whom the confession was made to have threatened the defendant if he did not confess or to make him any promise if he did confess, the confession under such circumstances is voluntary and admissible in evidence. Ellis v. State, Ala. Cr.App., 338 So.2d 428, 432 (1976); Kircheis v. State, 56 Ala.App. 526, 323 So.2d 412 (1975), cert. denied, 295 Ala. 409, 323 So.2d 421."
Primm v. State, 473 So.2d 547, 553 (Ala. Cr.App.1984). See also Warrick v. State, 460 So.2d 320, 323 (Ala.Cr.App.1984); Hinshaw v. State, 398 So.2d 762, 764 (Ala.Cr. App.), cert. denied, 398 So.2d 766 (Ala. 1981). In the present case, the record *863 shows that during the hearing on the motion to suppress, Billy Ray Fields responded that he was not a law enforcement officer and had never been employed as a law enforcement officer. He further stated that no police officer or person from the District Attorney's Office ever spoke to him concerning the murder in question until after he had made his statement. Officer Taylor testified that Billy Ray Fields was not a law enforcement officer and had not been instructed to engage in conversation with the appellant while in the jail cell next to the appellant. He further stated that no one from the Sheriff's Department, the District Attorney's Office, or his office ever instructed Fields to converse with the appellant.
Furthermore, because the appellant never made a statement to the police, and all questioning was ceased when the appellant stated that he wanted an attorney, the appellant's right to counsel under the Sixth Amendment was not violated. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); North Carolina v. Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979).
As to the appellant's claim that his statement made to the inmate constituted inadmissible hearsay, this claim is meritless, as the statement made constituted an admission.
"[T]he party's testimonial utterances do not pass the gauntlet of the hearsay rule when they are offered for him (unless they can satisfy some exception to that rule); but they do pass the gauntlet when they are offered against him as opponent, because he himself is in that case the only one to invoke the hearsay rule and because he does not need to cross-examine himself. ... The hearsay rule, therefore, is not a ground of objection when an opponent's assertions are offered against him; in such case, his assertions are termed admissions."
Wigmore, Evidence, § 1048(2) (1972).

III.
Appellant argues that the trial court abused its discretion by allowing two of the State's chief witnesses, Sheriff Sheffield and Police Chief Taylor, to sit at counsel table with the victim's son after the rule for exclusion had been invoked. Appellant contends that because Sheriff Sheffield and Police Chief Taylor were excused from the exclusionary rule and because they were "repeatedly called to the witness stand," the appellant was deprived of a fair and impartial trial.
Excusing a witness from the rule calling for the exclusion of a witness from the courtroom is a matter that rests within the discretion of the trial court.
"Where the rule for the exclusion of witnesses from the courtroom is invoked, it is within the sound discretion of the trial court to allow any one of the witnesses to remain in the courtroom during the examination of the others and the exercise of this discretion is not reviewable on appeal. Huskey v. State, 129 Ala. 94, 29 So. 838 (1901); Barnes v. State, 88 Ala. 204, 7 So. 38 (1890); Stone v. State, 55 Ala.App. 663, 318 So.2d 359 (1975). And this principle is applicable in prosecution for first degree murder. Smarr v. State, 260 Ala. 30, 68 So.2d 6 (1953); Roynica v. State, 54 Ala.App. 436, 309 So.2d 475 (1974), cert. denied, 293 Ala. 772, 309 So.2d 485, cert. denied, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 85 (1975). The sequestration of witnesses in a criminal prosecution, while rarely withheld upon request, is nevertheless discretionary with the trial court, and even where a witness remains in the courtroom in violation of the rule, the trial court's decision as to his testifying or not is not open to review. Beddow v. State, 39 Ala.App. 29, 96 So.2d 175 (1956), cert. denied, 266 Ala. 694, 96 So.2d 178 (1957), cert. denied, 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414 (1958)."
Young v. State, 416 So.2d 1109, 1111 (Ala. Cr.App.1982). See also Chatman v. State, 380 So.2d 351 (Ala.Cr.App.1980).
The exclusion of a witness is a matter that rests within the trial court's discretion, particularly where the witness excused *864 from the rule is a law enforcement official. In such cases, great deference will be accorded the trial court's decision. Lewis v. State, 55 Ala.App. 140, 313 So.2d 566 (1975). In addressing that matter this court stated:
"In Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, the court said:
`The sequestration of witnesses under "The Rule" while rarely to be withheld upon request, is nevertheless discretionary with the trial court. And, where, for instance, a witness has remained in the courtroom in violation of the rule, the trial court's decision as to his testifying or not is not open to review. Wilson v. State, 52 Ala. 299; Teague v. State, 245 Ala. 339, 16 So.2d 877. Moreover, the efficacy of sequestrationwhich can only occur during the trialis probably overrated. The law has moved from oath-taking to cross examination in its search for the truth.'
"In DeFranze v. State, 46 Ala.App. 283, 241 So.2d 125, the court held:
`Appellant claims error in the court's refusal to put the prosecutrix and two police officers under the rule. The exclusion of witnesses from the courtroom is entirely a matter of discretion with the trial court, and not of right. McLean v. State, 16 Ala. 672; Teague v. State, 245 Ala. 339, 16 So.2d 877; Beddow v. State, 39 Ala.App. 29, 96 So.2d 175, cert. denied, 266 Ala. 694, 96 So.2d 178, cert. denied, 355 U.S. 930, 78 S.Ct. 412, 2 L.Ed.2d 414. This discretion is not reviewable. Riley v. State, 88 Ala 193, 7 So. 149; Roberts v. State, 122 Ala. 47, 25 So. 238; Beddow v. State, supra. And it is within the discretion of the trial court to excuse some witnesses and not others. Brooks v. State 146 Ala. 153, 41 So. 156; McDowell v. State, 238 Ala. 101, 189 So. 183. This seems to be particularly true in the case of law enforcement officers. Wright v. State, 1 Ala. App. 124, 55 So. 931; Ledbetter v. State, 34 Ala.App. 35, 36 So.2d 564, cert. denied, 251 Ala. 129, 36 So.2d 571.'
The above quotations serve to dispose of appellant's claim of error." 55 Ala.App. at 143, 313 So.2d at 569.
Excusing the sheriff and the police chief from the rule was a matter within the sound discretion of the trial court. Therefore, the appellant's argument must fail.

IV.
Appellant argues that the State failed to prove that he had been previously convicted of three felonies for the purpose of sentence enhancement under the Habitual Felony Offender Act. Appellant objected at sentencing to the introduction of the prior convictions. He specified the grounds of his objection as being the failure to lay a proper predicate, failure to lay a proper foundation, hearsay, and lack of notice. However, in brief, the appellant argues that one of the prior convictions, a New York conviction, was not proved by a properly certified judgment entry, but rather by an extract from the minutes, and that there was no affirmative showing of representation by counsel. He also argues that the State failed to show that the New York conviction was a felony and that there was no proof that the appellant was the same person as that person named in the New York documents.
"The proper mode of proving prior felony convictions which occur in a sister state is set forth in § 12-21-70, [Code of Alabama (19750,] which states in pertinent part:
"`The record and judicial proceedings of the courts of any state or territory or of any such country shall be proved or admitted in any other court within the United States by the attestation of the clerk and the seal of the court annexed, if there is a seal, together with a certificate of the judge, chief justice or presiding magistrate that the said attestation is in due form
....'
"See Phillips v. State, 462 So.2d 981 (Ala.Cr.App.1984); Livingston v. State, 419 So.2d 270 (Ala.Cr.App.1982)." *865 McBride v. State, 480 So.2d 619, 620 (Ala. Cr.App.1985). See also Thomas v. State, [Ms. 4 Div. 614, April 22, 1986] (Ala. Cr.App.1986).
In McBride, as in Thomas, the State introduced certified copies of judgment entries from the "sister states," but failed to produce certificates "from a `judge, chief justice or presiding magistrate' verifying that the attestations were in due form," McBride, supra, at 620, and a proper objection to the introduction of this evidence was raised by the appellants. The record in the present case contains a certified copy of the judgment entry, as well as a verification.
As to the appellant's claim that the State has failed to show that he was represented by counsel upon conviction of this prior offense, it is clear that an uncounseled prior conviction cannot be used to enhance punishment. Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967). Thus, it must be shown that the accused was represented by counsel, or waived his right to counsel, at the time of his prior conviction, or the conviction is not available for consideration under the Habitual Felony Offender Act. Watson v. State, 392 So.2d 1274, 1279 (Ala.Cr.App.1980), cert. denied, 392 So.2d 1280 (Ala.1981). However, this court has distinguished the situation in Burgett, stating that the Supreme Court held that because of a discrepancy in the record, there was a "presumption that petitioner was denied his right to counsel," 389 U.S. at 114, 88 S.Ct. at 261-62, in that one version of the prior conviction stated that the petitioner had been "without counsel," while another version implied that the petitioner may have had an attorney. Ladd v. State, 431 So.2d 579, 580 (Ala.Cr.App.1983). "Although the Burgett court cautioned against `[p]resuming waiver of counsel from a silent record,' 389 U.S. at 114-115, 88 S.Ct. at 261-262, the record in the instant case is not silent. It shows that Honorable J. Louis Wilkinson appeared as counsel for appellant prior to trial." Id. This court wrote that if the appellant contended that he was not represented at trial, conviction, and sentencing, "we think he had both the burden and the opportunity of proving that fact. As the Court of Appeals for the Fifth Circuit stated in a case with similar circumstances, `[i]n view of the fact that the record is not "silent" as to [petitioner's] representation by counsel, he would have the burden of proving otherwise.' Wesley v. Alabama, 488 F.2d 30 (5th Cir.1974)." Ladd v. State, supra, at 581. In the present case, the documents pertaining to this prior conviction contained in the record clearly show that the appellant was represented by counsel during arraignment and at the entry of his plea. Therefore, there is a presumption that he was represented by counsel during the entire proceedings, and it is his burden to prove otherwise.
Appellant argues that his New York conviction was not proven to be a felony under Alabama law. The State introduced the judgment entry showing appellant's New York conviction, coupled with the documents underlying the conviction. It is apparent from reviewing the documents which are included in the New York indictment returned against the appellant that the New York conviction would be a felony under Alabama law.
Appellant admitted his two Clarke County convictions for burglary and receiving stolen property. Prior convictions may be proven by the testimony of the defendant at sentencing. Lyner v. State, 398 So.2d 420 (Ala.Cr.App.1981). Thus, appellant's convictions were proven and properly considered by the court for purposes of sentence enhancement pursuant to the Alabama Habitual Felony Offender Act.
Furthermore, the trial court will not be placed in error on appeal for grounds not specified during the sentencing hearing. Smith v. State, 409 So.2d 455 (Ala.Cr. App.1981); Slinker v. State, 344 So.2d 1264 (Ala.Cr.App.1977). Counsel for appellant did not properly object to the latter two issues he now raises regarding the admission of the prior felonies.

*866 V.
Appellant contends that his federal and state constitutional rights to an impartial trial and effective assistance of counsel were violated. He also claims he was denied due process of law and that he was not afforded his right against self-incrimination. Appellant argues that a conflict of interest arose because of the relationship between the prosecutor and the municipal judge, who was called as a witness by the prosecutor, in order to prove a legal arrest. The municipal judge who issued the arrest warrant was the brother of the part-time assistant district attorney who actively prosecuted the case. However, the record indicates that the subject matter of this testimony was confined to the events concerning the appellant's convictions on two prior misdemeanors, fines imposed thereon, failure to make payment, and the subsequent issuance of alias warrants pursuant to that failure. This testimony was merely cumulative, as the clerk had previously testified to these events; furthermore, this evidence had no real bearing on this case, as previously discussed. Therefore, any error in the admission of this testimony was harmless. C. Gamble, McElroy's Alabama Evidence, § 430.01; Alabama Rules of Appellate Procedure, Rule 45. Further, appellant's claim has not been properly preserved for review by this court, as no objection to this testimony was raised at trial. Bell v. State, 466 So.2d 167 (Ala.Cr.App. 1985); Moore v. State, 457 So.2d 981 (Ala. Cr.App.1984), cert. denied, 470 U.S. 1053, 105 S.Ct. 1757, 84 L.Ed.2d 820 (1985). Additionally, the testimony of the municipal judge, the brother of the prosecuting attorney, was never before the jury.
The appellant also argues that his previous attorney, Daryl Drinkard, withdrew from representing the appellant because he had accepted a position as an assistant district attorney working with the prosecutor. The appellant cites Zuck v. Alabama, 588 F.2d 436 (5th Cir.1979), rehearing denied, 591 F.2d 102, cert. denied, 444 U.S. 833, 100 S.Ct. 63, 62 L.Ed.2d 42 (1979), in support of his argument that "an actual conflict of interest existed because appellant's former attorney placed himself in a situation that was inherently conducive to divided loyalties." Appellant asks this court "to reconsider its decision in Terry v. State, Ala.Cr.App., 424 So.2d 710 (1982)." He argues that the rationale set forth in Zuck, supra, should be applied in the present case. It will not be necessary for this court to reconsider its decision in Terry, as the fact situation in Terry is not analogous to the circumstances of the present case. In Terry, the prosecuting attorney had formerly been associated with the attorney and the law firm that represented the defendant. In Terry, neither the defendant nor any of the prosecuting attorneys' former law partners had divulged any information about their client's case to the attorney who was later responsible for prosecuting the case against the defendant. In Terry, this court held that no conflict of actual or constitutional violation existed. There are two major distinctions between the facts in Terry and the circumstances that exist in the present case. In the present case, Mr. Drinkard was at one time the attorney who represented the appellant. In Terry, the prosecuting attorney had only been a member of the firm who represented the appellant, but he never represented the defendant nor did he have any direct involvement with the defendant, nor did he gain any information about the defendant's case through his association with the law firm that represented the defendant. Further, in the facts of the present case, Mr. Drinkard did not assist in the prosecution of the appellant's case after accepting the job of an assistant district attorney; thus, he was not directly involved in prosecuting the case, as was the attorney in Terry.
In Terry, the defense counsel's ex-partner was the prosecuting attorney. In the present case, the appellant's former attorney withdrew from representing the appellant and accepted employment with the district attorney who prosecuted the case. However, in the present case, Mr. Drinkard had nothing to do with the prosecution of the case.
*867 Appellant relies on Zuck, supra, in arguing that the assistant district attorney owed duties to a party whose interest was adverse to the interests of the appellant and, thus, that an actual conflict of interest existed. Appellant argues that it should make no difference whether his former attorney took an active part in the prosecution. The appellant's contention would be worthy of this court's consideration had the issue been preserved for appellate review. However, such is not the case.
The record in the case subjudice reveals that no motion was made by the appellant for the district attorney's office to remove itself from the case. Hannon v. State, 48 Ala.App. 613, 266 So.2d 825 (1972). There has been no showing by appellant that his former attorney gave any confidential information to the prosecution in this case.
Further, matters not objected to at trial cannot be considered on appeal. Moore v. State, 415 So.2d 1210, 1217 (Ala. Cr.App.1982), cert. denied, 459 U.S. 1041, 103 S.Ct. 459, 74 L.Ed.2d 610 (1982); Wood v. State, 416 So.2d 794, 799 (Ala.Cr.App. 1982); Fagan v. State, 412 So.2d 1282 (Ala. Cr.App.1982). However, although the trial court committed no impropriety, because no motion or objection in regard to this issue was made during trial, in the interests of time and efficiency this cause should be remanded to the trial court in order for it to conduct a hearing as to whether an actual conflict existed as to the defense counsel's subsequent employment with the district attorney's office. See Hannon v. State, 48 Ala.App. 613, 266 So.2d 825, 826-34 (Ala.Cr.App.1972), and cases cited therein; Terry v. State, 424 So.2d 710, 711 (Ala.Cr.App.1982).
REMANDED WITH DIRECTIONS.
All the Judges concur.

ON RETURN TO REMAND
McMILLAN, Judge.
Following the order issued by this court, the trial court conducted a hearing to determine whether a conflict of interest existed because of the defendant's previous court-appointed attorney's subsequent employment as a part-time assistant district attorney. The trial court found:
"1. That C. Daryl Drinkard did not bring any records or files pertaining to the defendant, Larry Edward Jackson, to the District Attorney's office;
"2. That C. Daryl Drinkard did not have any written or oral consultation with the District Attorney of the First Judicial Circuit about the defendant's case;
"3. That C. Daryl Drinkard did not turn over, or reveal, any information he has ascertained from the defendant to the office of the District Attorney of the First Judicial Circuit;
"4. That no knowledge or information acquired by C. Daryl Drinkard from his former client, the defendant, was communicated to the office of the District Attorney of the First Judicial Circuit;
"5. That C. Daryl Drinkard did not discuss the defendant's case, after he became an assistant district attorney for the First Judicial Circuit, with either Gaines C. McCorquodale, Assistant District Attorney of the First Judicial Circuit, or J. Lee McPhearson, District Attorney of the First Judicial Circuit, Mr. McCorquodale and Mr. McPhearson being the two individuals who actively prosecuted the case against the defendant, Larry Edward Jackson;
"6. That C. Daryl Drinkard did not participate in any manner in the trial of the cause of The State of Alabama vs. Larry Edward Jackson, CC-83-77, it being found by the Court that Assistant District Attorney C. Daryl Drinkard did not assist in any manner in the selection of jurors, make any opening statement, examine or cross-examine any witnesses, or make any closing argument in said case;
"7. That C. Daryl Drinkard had no prosecutorial responsibility for the trial of this cause, i.e., The State of Alabama vs. Larry Edward Jackson;

*868 "8. That C. Daryl Drinkard did not obtain any exculpatory information from the defendant while serving as his court-appointed attorney, but rather, the information which he discovered as a result of his own investigation related to matters of impeachment of the State's witness, Billy Ray Fields. That all of the alleged said impeaching witnesses did, in fact, testify under oath in this cause;
"9. That the information acquired by C. Daryl Drinkard from the defendant during Mr. Drinkard's representation of said defendant, corresponded with information which law enforcement officers had secured about this case prior to Mr. Drinkard's appointment'; said information having been acquired by the law enforcement officers during the time William E. Kimbrough had been the defendant's court-appointed attorney;
"10. That C. Daryl Drinkard studiously avoided divulging any information which he acquired from the defendant during the time of his representation of said defendant to any of the following: the District Attorney of the First Judicial Circuit, any Assistant District Attorney of the First Judicial Circuit, the Investigator for the District Attorney of the First Judicial Circuit, or any law enforcement officer;
"11. That the same theory of defense which had been communicated by the defendant to C. Daryl Drinkard, while Mr. Drinkard was representing the defendant, was presented by his trial court-appointed attorney, Stuart C. DuBose; namely, that the defendant proclaimed his innocence and denied having committed the offense for which the jury found him guilty;
"12. That the two attorneys who had the prosecutorial responsibility for the trial of this defendant were J. Lee McPhearson and Gaines C. McCorquodale, and that they were the sole prosecuting attorneys in this cause...."
Pursuant to these findings, we affirm the trial court's decision that no actual conflict existed.
The appellant has filed an application for rehearing and a Rule 39(k), A.R.A.P. motion for a statement of additional and/or corrected facts. There are no issues presented for review that have not been thoroughly addressed on appeal, and there are no valid grounds presented in the request for additional facts.
OPINION EXTENDED; AFFIRMED; APPLICATION FOR REHEARING OVERRULED; RULE 39(k) MOTION DENIED.
All the Judges concur.